## PACIFIC MUT. LIFE INS. CO. OF CALIFORNIA v. VOGEL.

(Circuit Court of Appeals, Third Circuit. May 3, 1916. Rehearing Denied June 17, 1916.)

### No. 2079.

1. INSURANCE ☞145(3)—RENEWAL RECEIPT—EFFECT OF DELIVERY.

Where an accident insurance company, without a demand for payment of the premium, delivered a renewal premium receipt to the insured, which provided for extension of the insurance, such delivery does not, without acceptance by the insured or payment of the premium, extend the insurance, on the theory that the company is estopped to deny liability until cancellation of the receipt.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 284–286; Dec. Dig. ☞145(3).]

2. INSURANCE ☞145(3)—ACCIDENT INSURANCE—POLICY—CONSTRUCTION.

A renewal premium receipt, purporting to continue a policy in force, delivered pursuant to a custom which permits the payment of the premium within 60 days, fixes liability upon the insurer from the date of its acceptance by the insured, and not from the date of the payment of the premium.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 284–286; Dec. Dig. ☞145(3).]

3. INSURANCE ☞145(1)—ACCIDENT INSURANCE—RENEWAL PREMIUM RECEIPT —DELIVERY.

An accident insurance company delivered to a policy holder a renewal premium receipt, duly countersigned, which purported to extend the policy for another year. At this time there had been no request by the policy holder for an extension of the insurance, nor was the premium paid for some time. It was the custom of the company to extend credit to policy holders in the matter of payment of premiums. Held that, while the mere delivery of the renewal premium receipt did not create a contractual obligation on the part of the company to maintain the policy in force, it was an offer to do so which the insured might accept by signifying intention within a reasonable time, or by payment within the period for which the credit was extended.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 278–283, 287–291; Dec. Dig. ☞145(1).]

4. TRIAL ☞142—JURY QUESTION—PROVINCE OF JURY.

Where the evidence as to a fact in issue is such that reasonable minds may differ, the matter must be submitted to the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 337; Dec. Dig. ☞142.]

5. INSURANCE ☞668(3)—ACCIDENT INSURANCE—EXTENSION OF INSURANCE.

In an action on an accident policy, which the insurer claimed had expired before the accident, the question whether, the renewal premium having been paid and accepted, the insurance was extended by the insured's acceptance of the renewal premium receipt, so that it covered an accident occurring before payment and after the premium became due, held under the evidence for the jury.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1734, 1755; Dec. Dig. ☞668(3).]

In Error to the District Court of the United States for the Western District of Pennsylvania; W. H. Seward Thomson, Judge.

Action by Julia B. Vogel against the Pacific Mutual Life Insurance

Company of California. There was a judgment for plaintiff, and defendant brings error. Affirmed.

Benjamin J. Jarrett and Willis F. McCook, both of Pittsburgh, Pa., for plaintiff in error.

John E. Laughlin and F. C. McGirr, both of Pittsburgh, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. This action was brought on a policy of accident insurance by the widow of the insured, who, in the event of her husband's death by accident, was the designated beneficiary. The defendant admitted the execution and delivery of the policy, but for defense maintained, that the policy had expired before the accident and had not been renewed; or if renewed, the failure of the insured to pay the renewal premium before the accident, relieved it of liability, and that a premium subsequently paid merely reinstated the policy as to injuries thereafter sustained. The jury rendered a verdict for the plaintiff; whereupon the defendant sued out this writ.

The errors assigned are directed mainly to the court's rulings upon the evidence, to its refusal to direct a verdict for the defendant and to the charge to the jury, so far as they were in opposition to the defendant's theory of the insurance transaction out of which the action arose. Error is also charged to the court in admitting certain testimony as a part of the res gestæ and in refusing to direct a verdict for the defendant on the ground that the deceased came to his death by natural causes. With respect to the former, we discover no error, and with regard to the latter, we find that the evidence, while conflicting, was sufficient to submit to the jury and to support the verdict.

The real questions for review are, whether there was evidence upon which the jury, in rendering a verdict for the plaintiff, could find that a contract of insurance had been consummated between the insurance company and the insured by the delivery and acceptance of a renewal premium receipt, involving an extension of credit as to payment of premium, under which the company was liable for injuries sustained before payment was made, or whether the court erred in refusing to direct a verdict for the defendant on the ground that no contract of renewal had been consummated, that the original policy had expired before the accident, and that payment of premium after the accident reinstated the policy only as to injuries thereafter sustained. The trial court submitted both these questions to the jury with appropriate instructions as to the verdict.

The Insurance Company issued to Joseph Vogel, Jr. (hereinafter referred to as the insured), a policy of accident insurance "for the term of twelve months from the sixth day of December, 1912." On December 1, 1913, a few days before the expiration of the term, the company issued and caused to be delivered to the insured a renewal premium receipt purporting to continue the policy in force for another term of twelve months. On March 2, 1914, being nearly three months after the date of the expiration of the original term, the in-

sured met with an accident and sustained injuries from which he died. Between the date of the accident and the date of his death, the renewal premium was paid and accepted.

The plaintiff bases her right of recovery upon several grounds. The first is that the company charged the renewal premium to its agent pursuant to an established course of dealing, whereby it treated its agent as its debtor, and thereby waived payment of premium by the insured as a prerequisite to liability, invoking a familiar principle of law appearing in Fidelity & Casualty Co. v. Willey, 80 Fed. 497, 25 C. C. A. 593 (C. C. A. 3d); Lebanon Mutual Ins. Co. v. Hoover, 113 Pa. 591, 8 Atl. 163, 57 Am. Rep. 511; Essington Enamel Co. v. Granite State Fire Ins. Co., 45 Pa. Super. Ct. 550, 557, and cases cited. We are not satisfied that the evidence supports this contention.

[1] The next position of the plaintiff is, that the delivery of a renewal premium receipt, without a demand for prepayment of the premium and without circumstances from which its acceptance is to be inferred, creates a liability which the company is estopped to deny, raises the implication of an extension of credit and continues liability until the receipt is cancelled. The logical deduction from this proposition is that the insurance company, by the mere delivery of a renewal premium receipt, waives the right not only to demand prepayment of premium, but to have the receipt accepted or rejected by the insured, which in legal effect amounts to an extension of credit without limit and a continuance of liability without consideration. This is hardly tenable.

[2] On the other hand, the defendant company relies upon a clause of the policy which provides, that:

"If a *past-due premium* shall be accepted on this policy by the company, * * * such acceptance *shall reinstate* the policy in force as to disability resulting from accidental bodily injuries *thereafter sustained.*"

It maintains that a renewal premium receipt purporting to continue a policy in force, delivered pursuant to a custom which permits the payment of the premium within sixty days, is effective only from the date of actual payment, and raises a liability of indemnity only for accidents occurring thereafter, without regard to whether a contract of renewal had theretofore been consummated, embracing an extension of credit as to the payment of premium. We feel that this position is no more tenable than that of the plaintiff. It would be a violent construction of a contract of insurance renewal to hold, that the giving of credit for sixty days for the payment of the premium, postponed to the end of that period the time when the policy should be effective as a liability of the company, or in other words, that when a contract of insurance is made between the insurer and the insured, including an extension of credit to the latter for a given period within which to pay the premium, the payment of the premium becomes a condition precedent to an obligation on the part of the insurer, determined in point of time not by the date of the contract but by the date of the payment. What motive would the insured have in making such a contract? The credit given would be useless to him, for during the period of credit and until the premium was actually paid, he would not

be insured. Connecticut General Life Insurance Co. v. Mullen, 197 Fed. 299, 302, 118 C. C. A. 345, 43 L. R. A. (N. S.) 725 (C. C. A. 3rd). This position is likewise unsound. We must therefore inquire upon what theory the liability of the insurer and the right of the insured to recovery in such a transaction as this, are to be determined.

[3-5] It is clear, that, in the absence of statute upon the subject, the mere delivery of a renewal premium receipt does not create a contractual obligation on the part of an insurance company, though by its terms it purports to continue the policy in force. The renewal of a policy of insurance is in itself a contract of insurance, which, like any other contract, cannot be consummated without the mutual assent of the parties. Such a contract has its inception in a proposal, and its completion in the acceptance of the proposal. Until by some word or act of the insured, acceptance of the offer is expressly made, or from evidence of an established course of dealing between the parties, acceptance is necessarily inferred, no contract of renewal is created. When an offer to renew is accepted it becomes a contract of renewal upon the terms agreed upon, whatever they may be. The insurer may demand payment of premium upon the delivery of the receipt. Then there is no contract of insurance until the premium is paid. Or the insurer may waive its right to payment of premium before assuming liability, give a credit as to payment and enter into a contract complete in all respects, the subsequent payment of premium being a matter of performance and not a condition of the contract. Then liability exists from the consummation of the contract, though payment of the consideration for the liability be deferred to a future day.

Pursuing this line of thought, we are of opinion that the delivery of the renewal premium receipt in this case was merely an offer by the insurance company to the insured to enter into a new contract continuing for another year the insurance that was about to expire, Richmond v. Travelers' Ins. Co., 123 Tenn. 307, 130 S. W. 790, 30 L. R. A. (N. S.) 954, and that this offer raised in the insurance company no liability to indemnify the insured against accidents until it was accepted. Therefore, the pertinent inquiry is, as discerned by the learned trial judge and embodied in his submission of the case to the jury, whether there was evidence that the offer was accepted and the contract of renewal completed in terms which embraced an extension of credit for the payment of the premium beyond the date of the accident. Pender v. North State Ins. Co., 163 N. C. 98, 79 S. E. 293; Mutual Reserve Life Ins. Co. v. Heidel, 161 Fed. 535, 88 C. C. A. 477 (C. C. A. 8th).

The circumstances of the transaction given in summary disclose that it had its inception in the renewal premium receipt delivered by the company to the insured, and received its first coloring from the language there employed. This receipt is in the following words:

"Received of Joseph Vogel, Jr. $70, *continuing in force* policy 1,115,218 from the 6th day of December, 1913, to the 6th day of December, 1914, at twelve o'clock noon, subject to all the conditions and agreements in the original policy. Not valid unless countersigned by the company's agent.

"Countersigned at Pittsburgh, Pa., the first day of December, 1913.

"Joseph A. Butler, General Agent."

The receipt is in the form used by other companies. Richmond v. Travelers' Ins. Co., supra. It was evidently used for a definite purpose, with an intended legal purport. While by its terms it was not valid unless countersigned by the company's agent, it was in this instance so signed and made valid within the company's meaning. Being thus deliberately framed and validated, it was delivered by the company, through its usual channels, to its general agent at Pittsburgh, by whom it was delivered to the firm of Horner and Ladley, insurance brokers and sub-agents to the general agent, by whom in turn it was delivered to the insured, without the intention on the part of anyone then to demand or to receive payment of the premium, although by its terms the company acknowledged payment.

It was testified that the delivery was made under a general custom of the company allowing an insured sixty days within which to pay the premium, and that from time to time and as exigencies arose, the time for payment of renewal premiums had been extended even beyond that period. The extension of credit by general custom or in certain instances by special contract, was obviously done to induce hesitating patrons to renew their insurance. It appears that Vogel had been insured by the defendant company for several years and was familiar with and had received the benefit of these practices. He was a soliciting agent of Horner and Ladley, the sub-agents to the general agent. He had received his renewal premium receipts and made premium payments to the company through that firm. As we have already stated, it does not satisfactorily appear that between Butler, the general agent, and Horner and Ladley, sub-agents, accounts were kept by which premiums were charged by the former against the latter. When Horner and Ladley placed insurance or when the company delivered renewal premium receipts to the customers of Horner and Ladley and the sixty day period of credit was about to expire or had expired, the practice of the general agency was to call upon the sub-agents, either by telephone or by the presentation of statements, asking for the payment of outstanding premiums. These demands generally preceded the date upon which the general agency was required to make settlement with the home office, being the last day of the month in which the credit period of sixty days expired. It appears in this case, that pursuant to that practice, the general agency, possibly at a date within the sixty day period but more probably at a date beyond it, followed up its offer to Vogel by calling upon Horner and Ladley for payment of Vogel's premium. This was sometime before the last day of February, 1914. Horner and Ladley communicated this call to Vogel, who immediately responded by saying that he would make payment in the early part of the next week, that is, sometime presumably during the first week in March. To this promise the company made no response, either by word or by cancellation of the outstanding receipt. It left the receipt in Vogel's hands, and permitted the matter to drag along until, on the second day of March, Vogel met with an accident. On the next day, formal notice of the accident was given both the sub-agency and the general agency. On the seventh day of March the premium was paid to the sub-agency by the son of the insured, and on the ninth day of March it was received by the gen-

eral agency and transmitted to the company, which accepted and retained it. Five days later Vogel died.

So the question is whether the evidence discloses a consummated contract. That question can be determined only by ascertaining what the parties did and said. Their acts and utterances constitute the facts upon which the existence and the terms of a contract are to be determined. When evidence of these facts is in conflict or of a nature from which reasonable men may honestly draw different inferences, the existence of the contract and its terms are matters of fact to be determined by a jury. In this case, the trial court was called upon ,to decide whether the evidence was of a nature and in such conflict as to require submission to a jury, or disclosed a transaction susceptible of but one construction, to be determined by the court as a matter of law. In approaching this question, what did the trial judge have before him? There was evidence of an unequivocal offer to continue in force a policy of insurance about to expire, a custom to extend credit for the payment of the premium for a given period, a practice to make further extensions to procure business, knowledge thereof and conduct thereunder by the insured in previous years, actual extension of credit in this instance beyond the customary period, a call for payment after the period of extension had been enlarged, a promise by the insured, perhaps in the nature of a counter-offer, to pay a few days later, no verbal response or act by the company either rejecting the counter-offer or withdrawing its original offer, an accident to the insured inferably within the period of the counter-proposition with the renewal premium receipt in his hands uncancelled, immediate and formal notice of the accident to the company, no response or inquiry on its part, subsequent payment of the premium and its acceptance and retention.

Is this testimony susceptible of but one construction, and with regard to that construction, is it of that certainty which is required when a court assumes to pass upon a fact as a matter of law? This testimony fairly raises the issue whether the payment of premium after the accident was in pursuance of a credit extended by a contract consummated before the accident, or was payment of a past-due premium upon a policy which had previously expired, by which the policy was reinstated only as to injuries thereafter sustained. Article 29. Upon this issue, we are of opinion, intelligent men may honestly differ. If they may, it is because the evidence presents different aspects. If in these aspects two theories are evolved and the evidence is sufficient to support either, then who but a jury can determine upon which theory the case must be decided? We concur with the trial court that the evidence was sufficient to support a verdict either for the plaintiff or for the defendant according as the jury found the payment had been made pursuant to a previously consummated contract, or for a past-due premium. Upon this question the jury was sufficiently instructed, and its finding, as evidenced by its verdict, is binding.

The judgment below is affirmed.

McPHERSON, Circuit Judge. I concur in the foregoing opinion, although with some hesitation on one point only. I am heartily in.

agreement with the legal principles that have been so clearly stated; the renewal receipt was a mere offer, or option, and could not become a contract until it had been accepted by Vogel. It seems to me therefore that the principal subject of inquiry should be the conduct of Vogel rather than the conduct of the company. The company had made its position clear by offering to renew, and its offer should certainly be taken in connection with the custom to allow the insured 60 days, or perhaps even longer, to make up his mind. But, as I read the evidence, the court should have instructed the jury that Vogel never did make up his mind, and therefore that no contract of renewal was ever made. Upon this point, however, the other members of the court hold a different opinion, and believe that enough evidence was offered to go to the jury. I accept their view as more likely to be correct than my own, and I file this memorandum merely to emphasize the legal proposition upon which we are all agreed—that the renewal receipt was only an offer and had no binding force until Vogel accepted it.