CONTINENTAL CAS. CO. v.
ROSENZWEIG et al.

United States District Court
S. D. New York.
May 22, 1952.

254

Alexander & Ash, New York City, Sidney A. Schwartz, New York City, of counsel, for plaintiff.

William A. Hyman, New York City, by Melville Harris, New York City, for defendant Rosenzweig.

Laurence W. Silverman, New York City, by Herbert W. Beller, New York City, for defendant Garcia.

EDELSTEIN, District Judge.

### Findings of Fact.

1. That the plaintiff is a citizen of the State of Illinois and the defendant Rosenzweig is a citizen of the State of New Jersey. The complaint was dismissed by consent as to Anthony Garcia, a citizen of New Jersey, the only other defendant served.

2. Continental Casualty Company issued an automobile liability policy, bearing number CA 4688898, to Bertram Hughes covering a Buick Sedan, 1946 model with serial number 14517954 with policy limits of $10,000 for injury to one person involved in an accident and $20,000 for injuries to more than one person and $5,000 for property damage, the policy period being January 10, 1947 to January 10, 1948.

3. On September 13, 1947, the aforesaid policy was endorsed to cover the interest of Albert I. Rosenzweig, one of the defendants herein, who had purchased the aforementioned Buick automobile.

4. On or about December 12, 1947, a renewal automobile liability policy was transmitted by plaintiff's agent to Albert I. Rosenzweig at his residence in New Jersey for the policy period of January 11, 1948 to January 11, 1949, covering the same Buick automobile and with the same limits.

5. The renewal policy bearing No. CA 4575546 was not requested by the defendant Rosenzweig or anyone on his behalf and he concedes that at the time that he received said policy at his home he did not intend to accept it, did not intend to be insured with the Continental Casualty Company for the period January 11, 1948 to January 11, 1949 and he, at the time of the receipt of said policy, did not intend to pay the premium of $54.65 which was called for in a bill received with said renewal policy.

6. Before January 10, 1948, Rosenzweig had requested his brokers, E. & J. S. Harris, with offices at 80 Maiden Lane, New York, New York to obtain a policy of automobile liability insurance for the aforementioned Buick and for the period January 10, 1948 to January 10, 1949.

7. A policy was obtained by the aforementioned brokers for Rosenzweig covering the aforementioned Buick for the period January 10, 1948 to January 10, 1949, with limits of $10,000 for each person and $20,000 for each accident from the Fidelity & Casualty Company of New York and said policy bears No. A 730270.

8. On January 15, 1948, the aforementioned Buick of Rosenzweig and he, as the driver thereof, were involved in an accident in New York City.

9. Shortly after the accident of January 15, 1948, Rosenzweig notified his aforementioned broker of the accident.

10. By notice dated February 5, 1948, the plaintiff advised Rosenzweig that it

desired to avail itself of the privilege of cancellation of the policy held by him with the Continental Casualty Company and that said policy was cancelled by virtue of said notice as of February 13, 1948.

11. Said cancellation notice sent by the plaintiff to the defendant Rosenzweig further stated that the policy had earned as premiums, up to the effective date of cancellation, the sum of $4.95 and requested that said sum be remitted at once.

12. On February 9, 1948, the defendant Rosenzweig paid to the plaintiff, the earned premium of $4.95 demanded by the plaintiff in its notice of cancellation dated February 5, 1948.

13. The defendant Rosenzweig sent and the plaintiff received, by registered mail, a written notice of the accident aforesaid on or about February 13, 1948.

14. The registered notice of the accident sent by the defendant Rosenzweig to the plaintiff advised the plaintiff that the defendant Rosenzweig had a policy on the same automobile with the Fidelity & Casualty Company and that the Fidelity & Casualty Company representative would be at a hearing to be held at the Motor Vehicle Court on February 17, 1948 and that the plaintiff would, no doubt, want its representative present also.

15. The registered notice aforesaid further advised plaintiff that if there were any further facts wanted, the defendant Rosenzweig would be glad to avail plaintiff of them.

16. On May 4, 1948, subsequent to the receipt by the plaintiff of the notice of accident aforesaid, plaintiff wrote to the defendant Rosenzweig requesting that he file a report of the accident with the Motor Vehicle Bureau.

17. By letter dated May 14, 1948, the defendant Rosenzweig advised plaintiff that he had filed a report of the accident with the Motor Vehicle Bureau and also advised plaintiff that the Fidelity & Casualty Company had been advised of the accident.

18. Various summonses and complaints subsequently served upon the defendant Rosenzweig by various claimants in connection with the aforementioned accident of January 15, 1948, were transmitted by Rosenzweig or his broker to the Fidelity & Casualty Company.

## Discussion.

The essential facts in the case are not in dispute but there is involved a question of factual interpretation as well as an issue of law. The defendant contends that, despite his actual intention not to enter into a contract of insurance with the plaintiff at the time of the delivery of its renewal policy to him, nevertheless, the issuance and delivery of the policy constituted a binding contract of insurance, notwithstanding the non-payment of the premium. Healy v. Insurance Co. of State of Pa., 50 App.Div. 327, 63 N.Y.S. 1055; McLean v. Tobin, 58 Misc. 528, 109 N.Y.S. 926; Equitable Trust Co. v. Taylor, 146 App.Div. 424, 131 N.Y.S. 475; National Union Fire Ins. Co. v. Ehrlich, 122 Misc. 682, 203 N.Y.S. 434. It is further argued that, going a step beyond the facts in the case at bar, even where the policy provides that insurance shall not be binding until the premium has been paid, delivery without requiring payment constitutes a waiver of that provision and gives rise to a valid and binding contract. Boehen v. Williamsburg Ins. Co., 35 N.Y. 131; Bodine v. Exchange Fire Ins. Co., 51 N.Y. 117. Thus, the position of the defendant is that as a matter of law, the contract was effectual upon delivery to him, regardless of his actual state of mind. The cases cited [1] do not, upon analysis, support this position. The proposition for which they stand is not the

1. Counsel have cited only New York cases, but it may be that New Jersey law should govern. However, the question is not significant because no choice-of-laws problem is presented. It is believed that the result would be the same under either New York or New Jersey law. No authority directly in point has been cited or discovered in either state, and only scant closely analogous New York cases have been found; but basically the problem is one of contract law, involving the manifestation of assent. See Restatement of Contracts, §§ 20, 72 and the New York and New Jersey Annotations.

broad one that delivery of a policy without the payment of the premium constitutes a valid and binding policy, but that payment of premium may, through waiver, be made a matter of performance rather than a condition of the contract. The contract must come into being by way of offer and acceptance. Normally, in insurance cases, the offer is made by application and the acceptance is manifested by a delivery of the policy by the insurer.[2] But delivery by the insurer does not necessarily constitute the acceptance; it may constitute the offer,[3] and a contract does not arise until that offer is accepted. The unsolicited delivery of a renewal policy a month prior to the expiration of the original policy, as here, is not an acceptance but an offer; and no contract of renewal is created unless acceptance by the insured is expressly made or necessarily inferred.[4]

■ In National Union Fire Ins. Co. v. Ehrlich, supra, involving delivery of an unsolicited renewal policy, it was held, in an action by the insurer for the earned premium, that there was an implied agreement to pay by the insured because of a prior established course of dealing between them. In the facts of the instant case, hewing strictly to the line of the objective theory of contracts [5] and disregarding the admitted intention of the defendant (or even, perhaps, assuming a contrary intention), it cannot be said that a necessary inference of acceptance arises on the basis of previous course of dealing between the parties. The extent of their past dealing was merely the endorsement over to the defendant of a policy covering a second-hand car bought by him. The fact that the plaintiff itself regarded the contract of renewal as effective is not persuasive of a contrary conclusion. Had the plaintiff sued for the earned premium, I believe it would not have recovered.[6] The payment of the short term rate by defend-

2. Carnahan, "Delivery of a Life Insurance Policy", 26 Minn.L.Rev. 50, 51.

3. See, for example, Millar v. New Amsterdam Cas. Co., 248 App.Div. 272, 289 N.Y.S. 599; Berrien v. New York Life Ins. Co., 132 N.J.L. 159, 39 A.2d 31.

4. Pacific Mutual Life Ins. Co. of California v. Vogel, 3 Cir., 232 F. 337; Trinity Universal Ins. Co. v. Rogers, Tex.Civ.App., 215 S.W.2d 349; Couch, Cyclopedia of Insurance Law, § 93. Cf., Metzger v. Aetna Ins. Co., 229 App.Div. 26, 240 N.Y.S. 755.

5. "A contract has, strictly speaking, nothing to do with the personal, or individual, intent of the parties. A contract is an obligation attached by the mere force of law to certain acts of the parties, usually words, which ordinarily accompany and represent a known intent. If, however, it were proved by twenty bishops that either party, when he used the words, intended something else than the usual meaning which the law imposes upon them, he would still be held, unless there were some mutual mistake, or something else of the sort. Of course, if it appear by other words, or acts, of the parties, that they attribute a peculiar meaning to such words as they use in the contract, that meaning will prevail, but only by virtue of the other words, and not because of their unexpressed intent." Judge Learned Hand in Hotchkiss v. National City Bank of New York, D.C., 200 F. 287, 293. See Also, 1 Williston on Contracts (1936 ed.) § 21; Restatement of Contracts, §§ 70, 71, 503. But see also Judge Frank's concurring opinion in Ricketts v. Pennsylvania R. Co., 2 Cir., 153 F.2d 757, 760, 164 A.L.R. 387, and his opinion in Martin v. Campanaro, 2 Cir., 156 F.2d 127. Assuming in this case the additional element of a prior course of dealing, the issue between the objective and subjective theories of contracts would be drawn in classic simplicity.

6. Cf., Associated Mutuals, Inc., v. Pope Lumber Co., 200 Ga. 487, 37 S.E.2d 393; National Union Fire Ins. Co. v. Ehrlich, supra.

It is probable that the putative insured's actual intent not to contract, in such a case, would be of lesser significance than in the instant case, or in the case of an action on the policy by him. The circumstances giving rise to this case —involving, essentially, the interests of two insurance companies—produce the unusual situation where the insured's actual intent possesses the unimpeachability of an assumed fact in a classroom hypothetical.

ant was a fraud on the insurer; for the payment constituted the acceptance of the offer of a renewal contract, and, since there was a duty upon defendant to disclose any material change in the risk before acceptance, it was ineffectual to create a valid contract.[7]

It is unlikely that an insurance company would contend—no matter from which direction the problem is posed—that, after the unsolicited delivery of a renewal policy, no contract is consummated until payment of the premium. Nor does this decision so hold. The payment of a premium may be a matter of performance rather than a condition of the contract, and violence might result to the customary way of doing insurance business were the law otherwise defined. But evidence of customary practice was not presented in this case.[8] It is possible that such evidence, in an appropriate case, could lay the foundation for a contrary inference. From the evidence presented in the case at bar, the court does not find facts upon which to base the conclusion that the defendant accepted the plaintiff's offer of a renewal policy of insurance. Accordingly, a valid contract of insurance was not consummated, and plaintiff is entitled to a declaratory judgment to that effect.

### Conclusions of Law.

(1) The court has jurisdiction of the parties and the subject matter of this action.

(2) There was no policy of the plaintiff in existence and in force and effect on January 15, 1948 affording any protection to Rosenzweig.

(3) The plaintiff is entitled to a judgment declaring the absence of any liability on its part to the defendant, Rosenzweig, under policy CA 4575546 together with the costs and disbursements of this action.

7. Millar v. New Amsterdam Cas. Co., supra; Strangio v. Consolidated Indemnity & Ins. Co., 9 Cir., 66 F.2d 330; Trinity Universal Ins. Co. v. Rogers, supra.

8. See Trinity Universal Ins. Co. v. Rogers, supra.