STANDARD CASUALTY COMPANY, Appellant v. BOYD
et al., Respondents

(71 N. W.2d 450)

(File No. 9457.   Opinion filed July 9, 1955)

**Davenport, Evans, Hurwitz & Smith,** Sioux Falls, for Plaintiff and Appellant.

**Cyril P. Shaughnessy,** St. Paul, Neb., and **Stephens & Riter,** Pierre, for Defendants and Respondents Kremlachek and Stewart.

**Roscoe Knodell,** Winner, for Defendants Boyd.

RENTTO, J.   Plaintiff instituted this action under our Declaratory Judgment Act seeking adjudication of its rights and liabilities arising out of an automobile liability policy issued by its agent to defendant Adell M. Boyd.   It joined as additional defendants Edward N. Kremlachek, Jr., Darla D. Kremlachek and Gerald Stewart. These persons were claiming that the defendant Adell M. Boyd and her husband Lloyd C. Boyd, also made a defendant herein, were liable to them for injuries suffered by them

on February 18, 1952 when the motor vehicle in which they were riding was involved in a collision with the car of the insured being driven by her husband. Also they were claiming that the liability of the Boyds to them was insured by the policy in question. It is the claim of the plaintiff that the policy involved was not in effect at the time of the collision because the insured had not paid the premium thereon or otherwise accepted it.

In their separate answers the Boyds admit they did not pay the premium on the policy, and allege that they did not receive it. However they do not concede that the policy was not in effect and ask that plaintiff's complaint be dismissed. The other defendants in their counterclaim allege that the premium on the policy in question was paid to plaintiff by the agent who issued it and that plaintiff may not now urge nonpayment for or nonacceptance of the policy by the insured. They claim that the policy was in effect on the day of the collision and ask a declaration to that effect. The court dismissed plaintiff's complaint and on the counterclaim entered a declaratory judgment adjudicating that the policy was in effect on the day in question. Plaintiff has appealed from that judgment.

The policy in question obligated plaintiff to "defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent". It also obligated plaintiff to "pay on behalf of the insured all sums which insured shall become legally obligated to pay as damages * * * caused by accident and arising out of the ownership, maintenance or use of the automobile". The policy provided that "any person or organization or the legal representative thereof who has secured such judgment * * * shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy". The record does not show that any of the defendants injured in the collision had started suits against the insured.

The first question for decision on this appeal is whether the controversy between the parties may be determined under the Uniform Declaratory Judgment Law. The provisions

thereof are found in SDC 37.01. The light in which these provisions must be read is provided by SDC 37.0112. It is there stated "This chapter is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and is to be liberally construed and administered". The legislative concern with the removal of uncertainty and the termination of controversy is emphasized in SDC 37.0105 and 37.0106.

While the decisions are not in harmony it is generally held that this state of facts presents a justiciable controversy within a Declaratory Judgment Act. This view finds increasing support in the more recent decisions. 16 Am.Jur., Declaratory Judgments, § 35, beginning on p. 57 of 1954 Cum.Supp. thereto; Annotation 142 A.L.R. 8; Borchard on Declaratory Judgments, 2d Ed., pp. 634-655; 1 C.J.S., Actions, § 18, p. 1039 of the 1955 Cum.Anno. Pocket Part. These authorities cite numerous cases, but they regard Aetna Life Ins. Co. of Hartford v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000, and Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826, as cases of most significance.

A justiciable controversy is present even though the injured persons have not reduced the claimed liability to judgment or commenced suit thereon. It is sufficient that claims are asserted grounded on the provisions of the policy. "It seems clear that the probable, practically inevitable, claims of an injured person under the usual casualty policy can never be deemed merely hypothetical or insufficiently ripe for an adjudication of the question of insurer's liability. Probably the decision of the United States Supreme Court in Maryland Casualty Co. v. Pacific Coal & Oil Co. may be deemed to have settled this issue, even when the company is defendant." Borchard, supra, 637. This is especially so when the policy gives the injured person a cause of action against the insurer if they recover judgment against the insured. The fact that the declaration is sought by the injured person rather than by the insurer should not alter the rule. Humphrey v. United States Fidelity & Guaranty Co., D.C., 38 F.Supp. 224.

■ We hold that the controversy between these parties may properly be determined in a proceeding under our Declaratory Judgment Act. The judgment entered will, in advance of additional litigation, remove the uncertainties which now confront each of the parties concerning the claims asserted by the injured parties. This holding we feel is in harmony with the declared legislative objective of our Declaratory Judgment Act and satisfies the requirements of an action thereunder as announced by this court in Greene v. Wiese, 75 S.D. 515, 69 N.W.2d 325; Danforth v. City of Yankton, 71 S.D. 406, 25 N.W.2d 50; State of North Dakota ex rel. Strutz v. Perkins County, 69 S.D. 270, 9 N.W.2d 500.

The essential facts are not in serious dispute. In July of 1950 the Boyds in the name of Adell M. Boyd purchased a new car. At their request the dealer from whom they bought the car had a policy of liability insurance thereon issued by Mr. Harold J. Volz a recording agent of plaintiff. This policy was in effect from July 5, 1950 to July 5, 1951. The dealer paid the premium with money furnished by the Boyds. On July 3, 1951 plaintiff's agent without solicitation or request issued a new policy to Mrs. Boyd similar to the previous policy, to be in effect from July 5, 1951 to July 5, 1952. This was mailed to Mrs. Boyd at her then address. In January 1952 the agent issuing the policy paid the premium thereon to plaintiff. On February 1 he wrote Mrs. Boyd the following letter:

"Mrs. Adell Boyd
"Mission, South Dakota

"Dear Madam:
"We renewed for you July 5th, 1951 your insurance policy and requested at that time that if there were any changes that you desired, to let us know. To date we have not been paid for the premium of $18.87 which we have submitted to the company. Your policy in your hands is your assurance that you do carry insurance on your car. If you do not desire to have the insurance, our office must have the policy in order to cancel it. Will you kindly let us know your desire on this coverage as we are

. carrying this amount of premium as owing us by yourself.

"Thanking you for your attention to this matter, I remain,

"Yours very truly,
"Harold J. Volz, Inc.
"By:   Dale D. Hammon

"DDH:dl
"Friday afternoon
"1st February 1952"

She opened and read this letter on the morning of February 18, 1952 the day of the accident.  She couldn't tell how long before that date the letter had been delivered to her. Possibly a day or two—or around the first part of February. When she read it she intended to go in that day and pay the premium but had to change her plans and go elsewhere. On this trip the collision occurred.  She never paid the premium or made tender thereof.

The policies referred to are the only insurance policies ever issued to her by this agent.  She never wrote to the plaintiff or the agent or talked with him about the policy in question after it was mailed to her.  The agent's payment of the premium was not at her request.  He regarded her as owing the same to him.  The agent considered it as being in effect at the time of the collision.  No attempt was made to cancel it prior to the collision.

It is well settled that the unsolicited issuance of a renewal policy a short time prior to the expiration of the original policy is but a proposal or an offer to insure.  As in the case of contracts generally it is essential to the creation of the contract of insurance that there be an offer or a proposal by one party and an acceptance by the other.  Regardless of which party makes the offer or proposal, its acceptance by the other is necessary to the creation of the contract.  The acceptance must be evidenced by some act that binds the party accepting.  A renewal of a term policy is in effect a 'new contract of insurance and must have all the essentials of a valid contract.  The acceptance may be express or it may be implied from the circumstances.  Cooley's

Briefs on the Law of Insurance 421; 1 Couch's Cyclopedia of Insurance Law 93; 44 C.J.S., Insurance, §§ 232 and 238; 29 Am.Jur., Insurance, 136; Pacific Mut. Life Ins. Co. of California v. Vogel, 3 Cir., 232 F. 337; Hodge v. National Fidelity Ins. Co., 221 S.C. 33, 68 S.E.2d 636; Boone v. Standard Accident Ins. Co. of Detroit, 192 Va. 672, 66 S.E.2d 530; Associated Mutuals, Inc., v. Pope Lumber Co., 200 Ga. 487, 37 S.E.2d 393; Trinity Universal Ins. Co. v. Rogers, Tex. Civ.App., 215 S.W.2d 349; Keller v. Provident Life & Accident Ins. Co., 213 S.C. 339, 49 S.E.2d 577; Pacific Nat. Fire Ins. Co. v. Suit, 201 Ark. 767, 147 S.W.2d 346. Whether Mrs. Boyd accepted plaintiff's offer of July 3, 1952, is the basic issue involved.

■ The injured persons, respondents herein, claim that there is a general custom among insurance agents to renew the insurance of their policyholders without request, and that in view of such custom a failure by the insured to reject the renewal is tantamount to its acceptance. This contention finds support in the following cases: Boone v. Standard Accident Ins. Co., supra; Trinity Universal Ins. Co. v. Rogers, supra; Continental Cas. Co. v. Rosenzweig, D.C., 105 F.Supp. 253; Hodge v. National Fidelity Ins. Co., supra. However this doctrine may not be availed of unless the custom is established and it is shown that the party relying thereon knew of it, or there had been a course of dealings between the parties from which it could be implied that the policyholder's silence or failure to reject the offer would be regarded as an acceptance. None of these are shown to exist in the instant case.

The trial court found that Mrs. Boyd received the renewal policy prior to the expiration of the original policy and retained it. Respondents are not contending that Mrs. Boyd's acceptance of the policy was an express one. They rely on her receipt and retention of the policy as constituting an implied acceptance and cite Peever Mercantile Co. v. State Mut. Fire Ass'n of Canton, 23 S.D. 1, 119 N.W. 1008, 1010. In that case this court said "In our opinion the court was right in holding that the renewal policy was in effect mailed to the plaintiff, although issued and addressed in the name of the old corporation, and that its retention by the

plaintiff was in legal effect an acceptance of the policy, and thereby created a binding contract between the defendant and the plaintiff". The question here present is not further discussed in that opinion. The files of that case in this court indicate that there had been a course of dealings between the parties extending over a period of four or five years.

Appellants by proper assignment of error question the finding above referred to. The following is the testimony on which it is based.

(Mrs. Boyd's testimony)

Mr. Heege: "Q. Do I understand that the only correspondence that you recall receiving from Mr. Volz subsequent or after July of 1950 was a letter that came to you after the fore part of February, 1952? A. Yes.

"Q. Now, Mrs. Boyd, didn't you tell me at the time I talked to you in February 1952, that the only policy you received was the one was effective from July, 1950, to July, 1951? A. Yes."

Mr. Riter: "Q. The words in the statement 'Liability insurance' and such words as that aren't words of yours but the words of the person who wrote the statement? A. Yes, all I know is that we had two policies."

Mr. Knodell: "Q. Do you Mrs. Boyd remember making a statement to Mr. Heege at the time, that the only policy we ever received was the policy effective from July 5, 1950 to July 1951? A. Why I think

"Q. To the best recollection did you make that exact statement to him? A. I can't say, but I told him we did have a policy. I was referring to the one we got when we bought the car.

"Q. You did get one policy when you bought the car? A. Yes, I paid for one.

"Q. The question is, did you receive that policy. Was this policy actually delivered to you? A. I think we got a policy."

Mr. Shaugnessy: "Q. Do you ever recall actually receiving such an original letter and a policy of insurance? A. I received a letter making the statement that my policy

"Q. Just confine your answer to just what I asked and then Mr. Parish can get the testimony. Recall that that reads July 3rd, 1951. That is the date I am talking about. To the best of your ability, we realize that this has been three years, could you recall whether you ever received the original letter on or about July 3rd, 1951 from Mr. Volz? A. No at that time, on July 3rd, I don't remember.

"Q. Would you want to tell the Court that you positively didn't receive such a letter? A. I want to make the right statement.

"Q. We want what you think in your own mind. A. I only received one letter that I know of.

"Q. That would be this letter dated February 1st, 1952, is that correct, Exhibit 2? A. Yes.

"Q. If you will just tell in your own words what happened that afternoon in your conversation with Mr. Peterson? A. He came and asked if I had a policy. I told him we had gotten a policy when we bought the car and I told him about the notice and he called Mr. Volz. I believe he said, first he said that I had a policy and that it wasn't paid for.

"Q. To the best of your knowledge, Mrs. Boyd, you want to state now, do you not, that you would not be positive that you did not receive this policy? A. To the best of my knowledge, I only remember one letter. To the best of my knowledge I remember reading the one letter.

"Q. That isn't the answer to my question. Can you say positively that you never received a policy of insurance on or about the 3rd day of July, 1951. A. No I can't say positively."

(Mr. Boyd's testimony)

Mr. Shaugnessy: "Q. Do you recall receiving

a renewal automobile policy of insurance from Mr. Volz in July 1951. A. No."

During the trial, at the court's suggestion, a stipulation was made concerning the mailing of the renewal policy. At that time counsel for plaintiff said "As a part of the stipulation as to Exhibit 1 dated July 3rd, 1951, it is understood, on behalf of Mrs. Boyd, that her testimony is to the effect that she has not received or didn't receive said letter or policy". While the record doesn't show any express agreement in this statement by the other parties or their counsel, neither does it show any disagreement. In their separate answer the Boyds allege that they did not receive the policy. Clearly this is a judicial admission which they are not at liberty to dispute as between themselves and plaintiff. Englund v. Berg, 69 S.D. 211, 8 N.W.2d 861. The policy is not a part of the record nor was it exhibited at the trial. No one offered any statement or testimony as to where the policy was at the time of trial.

■ As additional support for the questioned finding respondents rely on the well-settled rule that a policy of insurance is delivered to the insured when it is deposited in the mails, duly directed to him at his proper address, and with postage prepaid, even though in fact he never receives it. Jackson v. New York Life Ins. Co., 9 Cir., 7 F.2d 31; 44 C.J.S., Insurance, § 265(3); 29 Am.Jur., Insurance, 147, 148. However we believe this to be applicable only in those situations where a contract of insurance has been entered into but its effectiveness is postponed until delivery has been made. In those cases this fiction of "delivery" is indulged. That situation is not present in this case. We are here concerned with the question of delivery bearing on the communication of an offer to insure before a contract is consummated. Restatement of the Law, Contracts, § 23; SDC 10.0301.

■ The finding that Mrs. Boyd received and retained the policy is against the clear weight of the evidence. This record does not warrant or support the conclusion that she accepted plaintiff's offer to insure. It follows that the policy involved was not a valid contract.

■ ■ Because the premium on the policy was paid to plaintiff by the agent, respondents urge that plaintiff is estopped to question the acceptance of plaintiff's offer to insure. However it does not appear that Mrs. Boyd changed her position in reliance upon this conduct. This is a necessary element of equitable estoppel. Lambert v. Bradley, 73 S.D. 316, 42 N.W.2d 606. Consequently the doctrine urged is not available as a defense herein.

The judgment appealed from is reversed.

· RUDOLPH, P.J., and SMITH, J., concur.

ROBERTS, J., concurs in result.

SICKEL, J. (dissenting). In my opinion this action should be dismissed for lack of jurisdiction. 21 C.J.S., Courts, § 36; 15 C.J., Courts, §§ 78 and 79; Danforth v. City of Yankton, 71 S.D. 406, 25 N.W.2d 50.