F. Lucille EBERT, Plaintiff,

v.

FORT PIERRE MOOSE LODGE # 1813, acting by and through its officers and governing body, to-wit: Louis Caldwell, Governor; Charles Sullivan, Junior Governor; Leon Aasby, Junior Past Governor; Ron Murphy, Prelate; O. Vern Horsley, Treasurer; Rueben Christmann, Two-Year Trustee; Charles Carroll, Three-Year Trustee; and Clifford Withers, Manager and Secretary, Defendants and Third-Party Plaintiffs,

v.

Ed ARNDT, (# 13278) Third-Party Defendant and Appellant,

and

Randall WRIGHT and Wright-Way Agency, Ltd., a South Dakota corporation, (# 13276) Third-Party Defendants and Appellants,

v.

IOWA MUTUAL INSURANCE COMPANY, an Iowa Corporation, (# 13259) Third-Party Defendant and Appellant.

Nos. 13259, 13276 and 13278.

Supreme Court of South Dakota.

Argued May 21, 1981.

Decided Nov. 4, 1981.

Rehearing Denied Nov. 30, 1981.

Thomas M. Maher of Maher, Gors & Dean, Pierre, for third-party defendant and appellant, Ed Arndt.

James Robbennolt of Duncan, Olinger, Srstka, Lovald & Robbennolt, P. C., Pierre, for third-party defendants and appellants, Randall Wright and Wright-Way Agency, Ltd.

Acie W. Matthews of Willy, Pruitt, Matthews, Farrell, Frankman & Johnson, Sioux Falls, for third-party defendant and appellant, Iowa Mutual Insurance Co.

HENDERSON, Justice.

## ACTION

This is an insurance case originating from a worker's compensation award. Appeal is

taken from the trial court's judgment adjudicating Ed Arndt, Wright-Way Agency, and Iowa Mutual Insurance Company liable unto the Fort Pierre Moose Lodge # 1813 for $7,232.97; this amount represents the worker's compensation liability of Moose Lodge to employee F. Lucille Ebert, as adjudged pursuant to a bench trial between the two parties. Arndt, Wright-Way, and Iowa Mutual all appeal, each with contentions addressed and treated below. We reverse and remand.

## PARTIES

*Ed Arndt*: A licensed insurance agent for American Family Insurance who also brokers insurance with Wright-Way Agency.

*Wright-Way Agency*: An insurance agency that represents Iowa Mutual Insurance in the Hughes County, South Dakota area. Wright-Way's president and sole shareholder is Randall Wright.

*Iowa Mutual Insurance Company*: An insurance company based in DeWitt, Iowa, which is represented by Robert M. Barkley as general agent for South Dakota; Barkley's office is located in Sioux Falls, South Dakota.

*Fort Pierre Moose Lodge # 1813*: A fraternal organization doing business in Fort Pierre, South Dakota.

*F. Lucille Ebert*: An employee of Moose Lodge who sustained a work-related injury on December 6, 1977.

## PROCEDURAL FACTS

This case originated with a worker's compensation claim filed by F. Lucille Ebert against Moose Lodge in August of 1978. The trial court entered judgment on June 11, 1980, in favor of Ms. Ebert in the amount of $7,232.97.

In November of 1978, Moose Lodge filed a third-party complaint against Arndt and Wright-Way. Thereafter, Arndt filed a third-party complaint against Wright-Way and Iowa Mutual. Wright-Way then filed a third-party complaint against Iowa Mutual. Arndt, Wright-Way, and Iowa Mutual were all designated third-party defendants. On March 5, 1980, Ms. Ebert's claim against Moose Lodge was severed from the claim of Moose Lodge against the third-party defendants.

On June 11 and 12, 1980, Moose Lodge's claim against the respective third-party defendants was tried before a jury. The jury rendered a verdict which expressly recited: 1) Moose Lodge is entitled to be indemnified by Arndt for its liability to Ebert; 2) Arndt, in turn, is entitled to indemnification from both Wright-Way and Iowa Mutual; and 3) Wright-Way is entitled to be indemnified by Iowa Mutual. The verdict apportioned the damages as follows: Arndt—five percent; Wright-Way—fifteen percent; and Iowa Mutual—eighty percent.

The trial court entered judgment on September 5, 1980, which provided for the identical liability apportionment as the jury verdict, but did not, however, allow indemnification recovery between the third-party defendants.

## FACTS

In July of 1972, Iowa Mutual issued a worker's compensation policy to Moose Lodge; this policy was brokered by Arndt through Wright-Way. The policy was renewed annually, with the final date of effectiveness being July 1, 1977. Ms. Ebert's injury occurred in December of 1977, from which Moose Lodge became liable under state compensation law.

At trial, Iowa Mutual maintained that it had mailed Wright-Way a notice of non-renewal dated May 11, 1977. Wright-Way contended, however, that it never received this notice.

Robert M. Barkley, state agent for Iowa Mutual, testified that he received the May 11, 1977, letter of non-renewal from Iowa Mutual sometime during the middle of May 1977. Barkley also testified that he discarded this letter approximately six months later. Barkley further testified that Randall Wright of Wright-Way Agency contacted him in June of 1978 (after the question of insurance coverage arose) and re-

quested a copy of the non-renewal letter. Barkley's discarding of the letter required him to obtain a copy from Iowa Mutual's home office.

Randall Wright testified that it was customary for insurance companies to continue their coverage even though a renewal policy was not timely issued. Arndt testified that he never had any direct contact with Iowa Mutual and did not expect to receive any direct notice of non-renewal regarding the Moose Lodge policy; further, he did not know of any custom or arrangement as to Iowa Mutual's notifying him of non-renewals. Arndt further testified that if the policy in question was not renewed, he would expect to receive notice to that effect from Wright-Way.

## ISSUES

### I.

Did the trial court err in not allowing indemnification between the third-party defendants by entering a judgment that was inconsistent with the jury's verdict? We hold that it did.

### II.

Did the trial court err in instructing the jury and receiving evidence concerning past conduct and custom between the parties? We hold that it did not.

### III.

Did the trial court err by not instructing the jury on the legal presumption that a letter duly mailed must be presumed to have been received by the addressee? We hold that it did not.

### IV.

Is there sufficient evidence in the record to uphold a) the trial court's denial of Iowa Mutual's motions for a directed verdict and judgment n. o. v. and b) the

verdict of the jury? We hold that there is.

## DECISION

### I.

Both Wright-Way and Arndt contend that, under the evidence presented at trial and the verdict of the jury, they are entitled to be indemnified by Iowa Mutual for their respective liabilities to Moose Lodge. As previously mentioned, the jury found that Arndt was entitled to indemnification from Wright-Way and Iowa Mutual for his five percent apportionment of the damages. The jury also found that Wright-Way was liable for fifteen percent of the damages. The trial court's judgment, however, did not provide for Arndt's right of indemnification from either Wright-Way or Iowa Mutual, nor did it provide for Wright-Way to be indemnified by Iowa Mutual.

It is a general rule of law in South Dakota that "[t]he [trial] court is empowered to amend the [jury's] verdict, correcting manifest errors of form, to make it conform to the intention of the jury." *Lewis v. Storms*, 290 N.W.2d 494, 498 (S.D. 1980). Here, however, the inconsistency between the judgment and the verdict is not a result of an inherently erroneous verdict; in fact, none of the parties so contend. Rather, the judgment is defective due to its failure to fully reflect the verdict's indemnification provisions.

Absent an inherently erroneous verdict, a trial court's judgment is required to be based upon the verdict. *See* SDCL 15–6–58. A trial court cannot substitute its verdict for the verdict of the jury. *Walters v. Gilham*, 52 S.D. 82, 216 N.W. 854 (1927).

Indemnity is a remedial measure which is invoked to secure the right of the first party to be reimbursed by the second party for the discharge of a liability which, as between the parties, should equitably be discharged by the second party.[1] *Hartford*

---

1. The principle of indemnification is often confused with the similar principle of contribution. "Contribution requires the parties to share the liability or burden, whereas indemnity requires one party to reimburse the other entirely. Contribution is appropriate where there is a com-

*Accident and Indemnity Company v. R. Herschel Manufacturing Company*, 453 F.Supp. 1375 (D.N.D.1978). As was expressed in *Parker v. Stetson-Ross Machine Company, Inc.*, 427 F.Supp. 249, 251 (D.S.D. 1977):

> In South Dakota, indemnity is an "all-or-nothing" proposition. *Highway Construction Co. v. Moses*, 483 F.2d 812, 817 (8th Cir. 1973). To be entitled to indemnity, one must show "a proportionate absence of contributing fault." *Degen v. Bayman*, 86 S.D. 598, 200 N.W.2d 134, 137 (1972). The result of such a showing is to shift the entire liability to the party against whom indemnity is sought. *Degen*, supra, [200 N.W.2d] at 136; *Hendrickson v. Minnesota Power & Light Co.*, 258 Minn. 368, 104 N.W.2d 843 (1960). Thus, indemnity is not a means by which a portion of liability, comparative with the proportion of fault, can be shifted to another party.

"[A] joint tortfeasor may recover indemnity where he has only an imputed or vicarious liability for damage caused by the other tortfeasor." *Degen v. Bayman*, 86 S.D. 598, 603, 200 N.W.2d 134, 137 (1972).

In *Degen*, this Court adopted the viewpoint of the Minnesota Supreme Court as espoused in *Hendrickson v. Minnesota Power & Light Co.*, 258 Minn. 368, 104 N.W.2d 843 (1960). The court in *Hendrickson* held that although indemnity is not necessarily precluded per se among joint tort-feasors, the situations in which indemnity is allowed are exceptional and limited. Summarized, these situations were stated in *Hendrickson* as: (1) derivative or vicarious liability; (2) action at direction of, and for, another; (3) breach of duty to indemnify; (4) failure to discover negligence of another; and (5) express contract. We believe that only situation (3) is applicable here.

The thrust of Moose Lodge's complaint against Arndt and Wright-Way was a breach of contract to procure worker's compensation insurance coverage. In turn, the complaint of Arndt and Wright-Way against Iowa Mutual was based upon Iowa Mutual's failure to notify them of its determination not to renew the worker's compensation policy of Moose Lodge after several years of such renewals. Moose Lodge neither sued Iowa Mutual originally nor amended its complaint after Iowa Mutual was brought into the proceedings. Lacking indemnity, then, the maximum Moose Lodge could recover for its damages under the existing judgment would be five percent from Arndt and fifteen percent from Wright-Way.

The theories of liability between Moose Lodge, Wright-Way and Arndt are separate and distinct from those between Wright-Way, Arndt and Iowa Mutual. The basis of liability of Arndt and Wright-Way to Moose Lodge is their failure to provide worker's compensation insurance to Moose Lodge, a fact clearly demonstrated by the evidence. In juxtaposition, Iowa Mutual's liability stems from its failure to notify Arndt and Wright-Way of its intent not to renew its worker's compensation insurance coverage of Moose Lodge. This notification question was a factual issue at trial which the jury, by their verdict, clearly found against Iowa Mutual.

In conjunction with the above authorities, we hold that the judgment, as being inconsistent with the verdict, must be modified to provide for the indemnification provisions of the verdict. Thus, Iowa Mutual must indemnify Wright-Way and Arndt for their respective liabilities thereby being responsible for a total of one hundred percent of the damages suffered by Moose Lodge. Our disposition of this issue does not in any way overrule or qualify this Court's decision in *Degen v. Bayman*, supra, because here the defendant joint tort-feasors are not, either theoretically or factually, in *pari delicto*.

Generally, one of two joint tort-feasors cannot have contribution from the other. But there are exceptions to this rule.

---

mon liability among the parties, whereas indemnity is proper where one party has a greater liability or duty which justly requires him to bear the whole of the burden as between the parties." *Degen v. Bayman*, 86 S.D. 598, 602–603, 200 N.W.2d 134, 136 (1972).

One exception arises where, although both parties are at fault and both are liable to the person injured, yet, they are not in pari-delicto as to each other, as where the injury results from a violation by one of a duty which he owes to the other, so that as between themselves, the act or omission of the one from whom indemnity is sought is the primary cause of the injury.

*Fidelity & Casualty Company v. Northwestern Telephone Exchange Company*, 140 Minn. 229, 231, 167 N.W. 800, 801 (1918).

## II.

■ Iowa Mutual contends that the trial court erred when it allowed Randall Wright to testify concerning the general procedures used in the insurance field relating to the non-renewal of policies. Specifically, Wright testified that "it is a good practice" for the insurer to give notice to the insured when it is not going to renew a policy. Wright also testified that the events which transpired between July 1, 1977, (expiration date of the policy) and December 6, 1977, (the date of Ms. Ebert's injury) were consistent with an extension of coverage. Iowa Mutual objected to this testimony on grounds of conjecture, speculation, immateriality, irrelevancy, lack of foundation, and calling for a legal conclusion.

We hold that the trial court's evidentiary ruling was not erroneous. "Even in the absence of an express agreement between a local agent and the insured, a course of conduct by the insurer which automatically renews policies over a period of years may require an actual notice to the insured of intent not to renew." *Martin v. Argonaut Insurance Company*, 91 Idaho 885, 434 P.2d 103, 110 (1967); *see Standard Casualty Company v. Boyd*, 75 S.D. 617, 71 N.W.2d 450 (1955). Here, the policy in question was automatically renewed annually from July 1972 until July 1977. Furthermore, the testimony indicated that Wright was an established and experienced insurance agent who was qualified to render a competent opinion on the previous professional contacts between the parties.

■ Iowa Mutual also contends that the trial court erred by receiving into evidence a notice of cancellation on a burglary insurance policy issued to Moose Lodge by Iowa Mutual. This policy was cancelled in September of 1976. The trial court received this exhibit into evidence over Iowa Mutual's irrelevancy objection. It had been previously established that a copy of the cancellation notice was timely received in the mail by Wright-Way. Randall Wright testified that he thought the original cancellation notice had been sent to Moose Lodge. The cancellation notice is, in fact, specifically addressed to Moose Lodge. Testimony also revealed that Randall Wright had on a few occasions dealt directly with Moose Lodge regarding coverage under the burglary · policy. Even though the burglary policy was not directly linked to the worker's compensation policy, and recognizing the difference between a notice of non-renewal and a notice of cancellation, we hold that the introduction of the cancellation notice into evidence was not erroneous as it helped establish a course of conduct between the parties. *See Martin v. Argonaut Insurance Company*, supra; *Standard Casualty Company v. Boyd*, supra.

Consistent with its previous legal contentions, Iowa Mutual maintains that the trial court erred by not adopting its proposed jury instructions which would have stated, in essence, that a policy for a definite term can only be continued if the insurer tenders an offer and the insured duly accepts the offer. These instructions, of course, would have precluded any 'course of conduct' theory regarding an implied extension of the policy.

In support of this contention, Iowa Mutual relies heavily on *Shepard v. United States Fidelity and Guaranty Company*, 210 Kan. 652, 504 P.2d 228 (1972). *Shepard* involved an appeal from an order of summary judgment in favor of the insurer; appellant sued for collision damages to his automobile under an insurance policy which had been issued for a term of one year. The loss occurred approximately four months subsequent to the expiration of the

policy. On appeal, appellant theorized that he was entitled to have the policy considered as renewed because there was a custom, on which he relied, that the insurer would provide notice of the policy's expiration and that it would be renewed for a stated premium. Appellant urged that the insurer was estopped from denying liability under the policy if the insurer failed to act accordingly.

In ruling against appellant, the court in *Shepard* stated:

> We hold that where a policy of this kind was written for a definite term without any reference to a right of renewal the policy expired at the end of that term—in this case on June 12, 1969. Only by the tender of premium for an additional term and its acceptance by the insurer could the policy be continued in force beyond the initial term.

210 Kan. at 653, 504 P.2d at 229. This language, in and of itself, would appear to support Iowa Mutual's position. The court in *Shepard*, however, went on to state:

> Accordingly, if the insurer followed a practice (as seems to be the case) of notifying its policyholders that their policies were about to expire and calling attention to the premium for a new policy, it must be considered as an act of courtesy to the insured and an estoppel cannot be based on that fact alone, as appellant contends.
>
> The record shows no course of conduct between the parties which could support a claim of estoppel, and it is apparent that none could be shown.
>
> Evidence of custom in an industry or profession is relevant only as an aid to construction of a contract otherwise in doubt, or as a basis for reading into the contract an implied provision beyond the expressed terms. There is no claim in this case that there was such a prevailing custom which could write into a definitely expiring policy an implied agreement for automatic renewal.

210 Kan. at 653, 504 P.2d at 229.

As distinguished from *Shepard*, the facts of the instant case indicate the existence of "prevailing custom [between the parties] which could write into a definitely expiring policy an implied agreement for automatic renewal." *Id.* Indeed, this implied renewal theory was relied upon by Moose Lodge throughout trial.

In *Standard Casualty Company v. Boyd*, supra, 75 S.D. at 623, 71 N.W.2d at 454, we expressed this same principle:

> The injured persons, respondents herein, claim that there is a general custom among insurance agents to renew the insurance of their policyholders without request, and that in view of such custom a failure by the insured to reject the renewal is tantamount to its acceptance. This contention finds support in the following cases: *Boone v. Standard Accident Ins. Co.*, supra [192 Va. 672, 66 S.E.2d 530]; *Trinity Universal Ins. Co. v. Rogers*, supra [Tex.Civ.App., 215 S.W.2d 349]; *Continental Cas. Co. v. Rosenzweig*, D.C., 105 F.Supp. 253; *Hodge v. National Fidelity Ins. Co.*, supra [221 S.C. 33, 68 S.E.2d 636]. However this doctrine may not be availed of unless the custom is established and it is shown that the party relying thereon knew of it, or there had been a course of dealings between the parties from which it could be implied that the policyholder's silence or failure to reject the offer would be regarded as an acceptance. None of these are shown to exist in the instant case.

A trial court is to present only those issues to the jury by way of instruction which find support by competent evidence in the record. *Wolf v. Graber*, 303 N.W.2d 364 (S.D.1981); *Olesen v. Snyder*, 277 N.W.2d 729 (S.D.1979). We hold that, under the evidence presented at trial and in accord with *Shepard* and *Boyd*, the court below did not err by refusing to adopt Iowa Mutual's proposed jury instructions on renewal of the policy.

### III.

Iowa Mutual maintains that the trial court erred by not instructing the jury that a letter duly mailed must be presumed to

have been received by the addressee. Under the facts here, this instruction would have created the presumption that the notice/letter of non-renewal allegedly mailed by Iowa Mutual to Wright-Way was received by Wright-Way. Richard Dean Martin, an insurance underwriter for Iowa Mutual, testified as to the company's normal office procedure for mailing out notices of non-renewal. Randall Wright testified that his office never received the letter in question. Robert M. Barkley testified that he received a copy of the letter, but could not produce it during pretrial discovery and eventually obtained a copy from Iowa Mutual's home office.

■ In *Bank of Ipswich v. Harding County Farmers' Mutual Fire & Lightning Insurance Company*, 55 S.D. 261, 267–268, 225 N.W. 721, 723 (1929) (citation omitted) (emphasis in original), this Court stated:

"We are of the opinion that, where a person undertakes to show that he sent another a letter by mail, no presumption will arise that the letter so sent was received by the person to whom it was addressed unless it is shown that it was deposited in the postoffice [sic] or some department thereof, as, for instance, *in a mail box on a rural route*, and that such letter was properly addressed and stamped with sufficient postage."

This rebuttable presumption, with supporting evidence on behalf of respondent and denial of receipt with its supporting testimony on the part of appellant, was such, in our opinion, as to make the question of receipt a subject for the determination of the trier of fact.

The presumption of receipt of a letter duly mailed is ordinarily indulged in only when there is an absence of evidence to the contrary. *Roshek Realty Company v. Roshek Brothers Company*, 249 Iowa 349, 87 N.W.2d 8 (1957); 29 Am.Jur.2d, Evidence § 194 (1967).

■ Although the testimony of Richard Dean Martin may have initially established the presumption in question, the testimony of Randall Wright sufficiently negated this presumption which indicates that the trial court correctly rejected Iowa Mutual's requested instruction on this issue. Accordingly, we hold that the trial court did not err by so refusing this instruction.

## IV.

■ Iowa Mutual argues that there is insufficient evidence to support the denial of its motions for a directed verdict and judgment n. o. v.; and further contends that there is insufficient evidence to support the verdict.

This Court will view the evidence in a light most favorable to the non-movant of a directed verdict or judgment n. o. v. *Smith v. Halverson*, 273 N.W.2d 146 (S.D.1978); *Peterson v. Snell*, 80 S.D. 496, 127 N.W.2d 142 (1964); *Snell v. Watts*, 77 S.D. 534, 95 N.W.2d 453 (1959). Despite the lack of any direct communication between Moose Lodge and Iowa Mutual, we believe that the evidence sufficiently establishes that Moose Lodge's interests were directly affected by what Iowa Mutual did or did not do in servicing the policy maintained on behalf of Moose Lodge over several years. Hence, we hold that the trial court did not err by denying Iowa Mutual's motions.

■ Upon review, the evidence and inferences therefrom are viewed in a light most favorable to uphold the verdict. *United States Fire Insurance Company v. Dace*, 305 N.W.2d 50 (S.D.1981); *Olesen v. Snyder*, supra; *Engberg v. Ford Motor Company*, 87 S.D. 196, 205 N.W.2d 104 (1973). If, when so viewed, there is competent and substantial evidence to support the verdict, it must be upheld. *United States Fire Insurance Company v. Dace*, supra; *Olesen v. Snyder*, supra; *Vander Vorste v. Northwestern National Bank*, 81 S.D. 566, 138 N.W.2d 411 (1965). We have reviewed the evidence under these standards and hold that the verdict of the jury should be upheld.

The remaining issues posed by the briefs are either rendered moot by our holdings herein or are non-meritorious.

The judgment of the trial court is reversed and remanded for entry of a judg-

ment based on that portion of the jury verdict granting indemnity.

All the Justices concur.