Geoffrey Raymond PETER and Norman Valentine, Plaintiffs,

v.

The TRAVELERS INSURANCE COMPANY, a corporation, Defendant.

Civ. No. 72-960-RJK.

United States District Court, C. D. California.

April 25, 1974.

**1348**

Richard F. Outcault, Jr., Lawler, Felix & Hall, Los Angeles, Cal., Harlow P Rothert, Cullinan, Hancock, Rothert & Burns, San Francisco, Cal., for plaintiffs.

Francis Breidenbach, Cummins, White & Breidenbach, Los Angeles, Cal., for defendant.

### MEMORANDUM OF DECISION

KELLEHER, District Judge.

Plaintiff Valentine is one of several underwriters at Lloyd's of London who wrote a blanket liability insurance policy issued to Loffland Brothers Drilling Company (hereinafter Loffland) covering its legal liability in excess of $250,000. The other underwriters of this policy have agreed to Valentine's representing their interests in this matter. Defendant Travelers Insurance Company was the primary liability insurer of Loffland, with policy limits of $250,000. Eldor D. Horning, an employee of Loffland, was injured while working at a drilling site in an oil field in Alaska operated by American Petroleum Corporation and American Richfield Corporation (hereinafter ARCO). Horning brought suit in the Central District of California against American

Petroleum and ARCO. Travelers defended this suit with an agreement to indemnify American Petroleum and ARCO for any recovery by Horning subject to the terms and limitations of its policy. At trial the jury returned judgment in favor of Horning in the amount of $407,000. After judgment the plaintiff agreed to accept, in compromise settlement, the sum of $137,984.10 in excess of the primary limit of $250,000.

Plaintiff's first cause of action is to recover the excess amount paid to Horning as a result of the above judgment and pursuant to the terms of the policy of excess insurance. Plaintiff contends that it was the breach of defendant's duty to negotiate a settlement within its policy limits that necessitated plaintiff's payment of the excess under its policy. In a second cause of action, plaintiff claims that defendant should have but did not attempt to impose a lien on workman's compensation benefits paid to Horning by Travelers. Plaintiff alleges that such a lien would have reduced the judgment and thus the amount of plaintiff's liability to Horning.

During the pendency of the Horning case, Travelers changed its settlement policy. The home office in Hartford, Connecticut, withdrew authority for its branch offices to make settlement offers in excess of $15,000 without first obtaining authorization from the Hartford office. In addition, there was considerable lack of communication between the Hartford office and the Los Angeles office that was processing the claim. The defendant's agent in Los Angeles had written some letters to the home office indicating some chance of avoiding all liability, but also he suggested the value of the claim to be around $100,000. The Hartford office, without seeking further advice from the local attorneys, refused to authorize any offer to settle greater than $15,000. As a result of this confusion within the Travelers' organization, Horning's tendered offers to settle within the policy limits of $250,000 were refused. Meaningful settlement negotiations were never conducted between the

parties because of the defendant's refusal to give meaningful consideration to settlement. The breach of duty by the defendant consists of this failure to give any adequate consideration to the settlement prospect.

■ Standards for determining whether an insurer would be liable in excess of its policy limits for failure to accept a settlement offer within those limits were considered in Crisci v. Security Insurance Co. of New Haven, Conn., 66 Cal.2d 425, 58 Cal.Rptr. 13, 426 P.2d 173 (1967). It was there reasoned that in every contract, there is an implied covenant of good faith and fair dealing that neither party will do anything which will injure the right of the other to receive the benefits of the agreement and, further, that this implied obligation requires an insurer to settle in an appropriate case, although the express terms of a particular policy do not impose this duty. When determining whether to settle a case, the interest of the insured must be given at least as much consideration as those of the insurer. In making this determination, the test is whether a prudent insurer without policy limits would have accepted the settlement offer. The Court need not find that the available offer should have been accepted. · The finding is that no offer in excess of $15,000 was to be considered. This was arbitrary, capricious and unreasonable in the circumstances.

■ Crisci also makes it clear that the reasonableness standard is to be used in judging the insurer's decision to refuse a settlement offer. Liability is imposed not for a bad faith breach of the contract, but for a failure to meet the duty to accept reasonable settlements, a duty included within the implied covenant of good faith and fair dealing. The failure even to consider the question of what settlement would be reasonable is a breach of greater proportion than the refusal of a reasonable offer.

■ In the case before us, the injuries to Horning were serious. Although Travelers was hopeful that it could avoid liability completely, it should also have realized that a substantial recovery was possible. One of Travelers' own claims supervisors in Los Angeles had determined the value of the case to be $100,000. Because of the unfortunate breakdown in communication during the initiation of a new procedure, Travelers thus failed to consider adequately the interests of its insured, Loffland. Under Crisci, Travelers would thus be liable to its insured for any damages resulting from this breach of duty.

Since there has been a breach of the duty to settle within policy limits, the question remains whether Travelers, the primary insurer, is liable to Valentine, the excess insurer. Although there are few decided cases which have considered this question, the Court of Appeals for the Tenth Circuit has held in a line of cases that a primary insurer does have a duty to an excess insurer. Other than noting that the equities are not equal between the two insurance companies, however, that court has not elaborated on the nature of this duty. See, e. g., American Fidelity & Casualty Co. v. All American Bus Lines, 190 F.2d 234 (10th Cir. 1951), cert. den., 342 U.S. 851, 72 S.Ct. 79, 96 L.Ed. 642; St. Paul-Mercury Idemnity Co. v. Martin, 190 F.2d 455 (10th Cir. 1951); and United States Fidelity and Guaranty Company v. Tri-State Insurance Company, 285 F.2d 579 (10th Cir. 1960). This issue has also been considered by a New York Supreme Court in Home Insurance Company v. Royal Indemnity Company, 68 Misc.2d 737, 327 N.Y.S.2d 745 (1972). The New York court there relied on American Fidelity & Casualty Co. v. All American Bus Lines, supra, to support its finding for the excess insurer.

■ Any cause of action which the excess insurer has against the primary must come by way of subrogation and is conditioned upon its meeting the requirements of equitable subrogation un-

**1350**

der California law. These requirements are set forth in Patent Scaffolding Co. v. William Simpson Construction Company, 256 Cal.App.2d 506, 64 Cal.Rptr. 187 (1967):

"The elements of an insurer's cause of action based upon equitable subrogation are these: (1) The insured has suffered a loss for which the party to be charged is liable, either because the latter is a wrongdoer whose act or omission caused the loss or because he is legally responsible to the insured for the loss caused by the wrongdoer; (2) the insurer, in whole or in part, has compensated the insured for the same loss for which the party to be charged is liable; (3) the insured has an existing, assignable cause of action against the party to be charged, which action the insured could have asserted for his own benefit had he not been compensated for his loss by the insurer; (4) the insurer has suffered damages caused by the act or omission upon which the liability of the party to be charged depends; (5) justice requires that the loss should be entirely shifted from the insurer to the party to be charged, whose equitable position is inferior to that of the insurer; and (6) the insurer's damages are in a stated sum, usually the amount it has paid to its insured, assuming the payment was not voluntary and was reasonable." Patent Scaffolding Co. v. William Simpson Construction Company, 256 Cal.App.2d 506, 509, 64 Cal. Rptr. 187, 190 (1967).

In *Patent Scaffolding,* a general contractor breached its contract with its sub-contractor to provide fire insurance for scaffolding left on the construction site. The regular insurance company for the sub-contractor paid for the loss when some of the scaffolding was destroyed by fire. The court denied the insurance company's claim to subrogation against the general contractor, and found that it was not the breach of the contract by the general contractor that caused the loss, but that it was the fire. This lack of a causal relationship was sufficient to make the insurance company ineligible for subrogation.

In the case before us, Travelers' breach of its duty caused the loss. Had Travelers accepted the offer to settle, the loss resulting from the injuries to Horning would have been something less than $225,000. It was Travelers' unwillingness to negotiate for a settlement in excess of $15,000 that was the proximate cause of the $137,984.10 which plaintiff, as excess insurance carrier, was obliged to pay in discharge of its insured's liability.

Moreover, strong equitable and economic considerations also compel this result in the present case. The primary carrier's duty arises by way of a contract with the insured, and this duty is not reduced merely because of another contract between the insured and its excess insurer.

An insurance company's duty to act in good faith in settling claims within its policy limits is well established and is reflected in its premiums. That an excess insurer may recover from the primary for a breach of duty does not increase the duty or the liability of the primary. Under the doctrine of equitable subrogation, the duty owed an excess insurer is identical to that owed the insured. The excess will not be able to force the primary into accepting any settlement which his duty to the insured would not require accepting. St. Paul-Mercury Indemnity Co. v. Martin, *supra,* at 457. In considering whether it will settle a claim, the primary insurer may consider its own interests, but it must equally consider the interests of the insured, which become the interests of the excess insurer by subrogation.

While the interests of the primary insurer are, for the most part, unaffected by the existence of excess coverage, the interests of the excess carrier are very much affected by the actions of the primary. If the primary carrier undertakes the representation of the insured, then it has the sole right to negotiate settlements. If the primary carrier

is relieved of its duty to accept reasonable offers by the existence of excess insurance, it would put an additional financial liability on the excess carrier which would be reflected in increased premiums. It would also have the effect of reducing the incentive of a primary insurer to settle when the settlement offer is near or over its policy limits. This is contrary to the interests of the public and the insured in obtaining prompt and just settlement of claims. *See generally Bloom,* "Recovery Against Primary Insurer by Excess Carrier for Bad Faith or Negligent Failure to Settel," 36 Ins. Counsel J. 235 (1969).

Valentine's claim in relation to workman's compensation becomes moot by reason of the determination by the Court aforesaid.

This memorandum shall constitute findings of fact and conclusions of law by the Court, and judgment will be entered accordingly.