140 N.J. Super. 338 (1976)
356 A.2d 83
WESTERN WORLD INSURANCE COMPANY, PLAINTIFF,
v.
ALLSTATE INSURANCE COMPANY, DEFENDANT AND THIRD-PARTY PLAINTIFF,
v.
RICHARD LEWIS AGENCY, THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided February 26, 1976.
Supplemented March 17, 1976.
*339 Mr. Donald Berlin for plaintiff (Messrs Lieb, Teich & Berlin, attorneys).
Mr. Victor C. Harwood, III, for defendant and third-party plaintiff (Messrs. Harwood, Lloyd, Kelly, Ryan, Coyle & Wulster, attorneys).
Mr. Edward M. Gurry, for third-party defendant (Messrs. Gurry and Conlan, attorneys).
PETRELLA, J.S.C.
These two summary judgment motions raise novel questions concerning the relationships between excess and primary insurance carriers and the insurance agency securing such coverage.
*340 Plaintiff Western World Insurance Company (Western) ($40/80,000 excess coverage) seeks indemnification from Allstate Insurance Company (Allstate) ($10/20,000 primary coverage) for $10,000 expended by it, without prejudice to its present legal position, in satisfaction of a personal injury claim successfully pursued by one Mildred Callahan. It is undisputed that the insured promptly reported the occurrence of the accident to the Richard Lewis Agency (Agency) which thereupon duly reported the incident in January 1972 separately to both Allstate and Western. Western thereupon set up an accident file but did nothing further.
Agency had negotiated coverage from Allstate for the 233 Taxi Corp. through the Assigned Risk Plan and secured excess coverage with Western under a group policy.
After suit was instituted Agency duly forwarded a copy of the summons and complaint to Allstate.[1] According to Agency it followed its customary procedure, although it has no record of it, and forwarded a copy of the suit papers to the excess carrier at the time they were sent to the primary carrier. Western now disputes this and asserts this is a fact issue requiring a denial of summary judgment.
On June 6, 1974 a negligence trial was held on the issue of liability only. Western did not participate in this proceeding. However, both Allstate and Western were obligated to their insured under their respective policy contracts.
Allstate apparently became aware of the excess coverage from its insured the day before the actual trial date and then notified Western. This notification was effective either immediately, or just after the June 6, 1974 trial, or at the latest, by letter dated July 3, 1974.
The damage issue was scheduled for trial on July 15, 1974, with plaintiff's attorney present, but the matter was "disposed of" for $20,000  each carrier contributing $10,000.
*341 Western now complains that Allstate breached a duty to give notice of the suit. Allstate asserts that if it is liable, Agency is responsible for failure to advise it of the existence of Western as an excess carrier, and accordingly has joined Agency as a third-party defendant. Allstate and Agency now seek summary judgment as a matter of law as to the respective claims against them. Western has not asserted any claim against Agency.

I
Although, in seeking to avert summary judgment, plaintiff alleges some fact issues (including those mentioned above) asserted to be material, it would make no difference in law if there is no cause of action. Indeed, for reasons stated herein, those disputed facts are not material. Plaintiff wishes to impose a duty upon the primary insurer analogous to the duty a carrier owes to its insured. In support of this proposition it relies on Rova Farms Resort, Inc. v. Investors Co. of America, 65 N.J. 474, 498 (1974), which "permits a carrier to escape liability for excess unless its decision to go to trial is marred by dishonesty, bad faith or negligence." This reliance is misplaced. The "excess" amount which concerned our Supreme Court in Rova was absorbed by the insured and the loss was proximately caused by the carrier's refusal to settle within policy limits. More significantly, the doctrinal basis for liability was predicated on the inherent fiduciary duty between an insured and his insurer.[2]Rova never purported to address itself to the relationship between two carriers and thus is clearly inapposite.
*342 Plaintiff also relies on Yeomans v. Allstate Ins. Co., 130 N.J. Super. 48 (1974), wherein the Appellate Division found Allstate liable for the difference between its policy limits and the amount of an excess verdict against the insured. The holding and rationale in Yeomans, however, is virtually identical to that in Rova. Although both decisions are consistent, neither affects the problem at hand. Counsel as the court have uncovered no decisional law in this jurisdiction which recognizes a fiduciary relationship between a primary and an excess insurance carrier in the circumstances of this case. Indeed, since the excess carrier requires primary coverage, it obviously knows of the existence of the primary carrier. Western was in a position to respond to the incident report when received. The law does not impose a duty where a party has done nothing to assert or make known its rights to persons not in a contractual or fiduciary position.
Plaintiff also argues that the court should adopt the reasoning expressed in Peter v. Travelers Ins. Co., 375 F. Supp. 1347 (C.D. Cal. 1974).[3]Peter was an action by an excess liability insurer against Travelers Insurance, the primary carrier, to recover the excess amount paid on behalf of the insured as the result of a judgment.
In that case plaintiffs were two of several Lloyd's of London underwriters who wrote a blanket excess liability insurance policy covering a drilling company after the underlying $250,000 coverage. An employee injured at a drill site in Alaska was awarded a jury verdict of $407,000. Plaintiff thereafter settled his claim for $137,984 over Travelers' $250,000 coverage.
The plaintiffs in Peter complained that the primary carrier breached a duty to negotiate a settlement within the policy limits. Initially, the court was troubled by the *343 change in settlement procedures by Travelers during the pendency of the litigation whereby the home office withdrew authority for its branch office to make settlement offers in excess of $15,000 without first obtaining its authorization. Evidently the change in policy caused confusion and a settlement offer of something less than $225,000 was ignored by Travelers, thus leading the federal court in California to conclude that meaningful settlement negotiations were never conducted.
The court said that under California law there is a breach of duty when a primary carrier fails to give adequate consideration to a reasonable settlement offer within the policy limits.[4] The court noted also that any cause of action must be couched in and meet the requirements of California's doctrine of equitable subrogation.
In the instant case this court is of the opinion that the Peter case, in addition to not being binding on this court, is not persuasive as to the motions at bar. The Peter case can be further distinguished since Allstate in the case before the court paid its entire policy limit in settlement and there obviously was no basis of a claim that Allstate refused a settlement within its policy limits. The absence of an allegation of refusing to settle within the policy limit precludes Western from relying on any principal of equitable subrogation since the insured would have no claim against the primary carrier.[5]
*344 The Peter case obviously is factually distinguishable from the issues presented here. Indeed, if the primary and excess carrier were both participating in settlement discussions there may be a duty of the primary carrier to the excess carrier (directly or though subrogation) to give adequate consideration to a reasonable settlement offer within the policy limits.
More importantly, plaintiff has failed to formulate a sustainable cause of action, and this failure requires the court to grant Allstate's motion for summary judgment as a matter of law. There is no duty imposed by contract or otherwise on the primary carrier to discover the existence of an excess carrier. The excess carrier is in a much better position to communicate with the primary carrier since it knows of the existence of the primary insurance, an obvious prerequisite for "excess" coverage.

II
Allstate does not dispute that it received notice of the accident and the suit; however, it contends that the Agency's responsibility extends to giving notice of the existence of an excess carrier. Once again the search for supportive precedent was not rewarding. Our case law is devoid of authority impressing a duty of notification by the insurance broker to the primary carrier under these circumstances. Nor does the third-party beneficiary theory in contract appear appropriate in this setting since the benefit to the primary carrier was only incidental to the transaction. Crown Fabrics Corp. v. Northern Assur. Co., Ltd., 124 N.J.L. 27 (E. & A. 1939); Brooklawn v. Brooklawn Housing Corp., 124 N.J.L. 73 (E. & A. 1939), and Moorestown-Management, Inc. v. Moorestown Center, Inc., 104 N.J. Super. 250 (Ch. Div. 1969).
Allstate contends that Appleman, Insurance, § 8790 supports a claim of a duty which would impose liability on the third-party defendant. However, Appleman does not *345 deal with any obligation to advise a primary carrier of the existence of an excess carrier, and any analogy is inappropriate. If a duty is owing, it would be from the Agency to Western which asserted no claim here against Agency.
Thus, as between Richard Lewis Agency and Allstate, there is no legal duty upon it as a broker to notify a primary carrier of the existence of an excess carrier. Nor has there ever been a claim that Agency was indeed an "agent" of Allstate, perhaps for obvious reasons.
The court, of course, recognizes there is another ground for granting summary judgment in favor of Agency. Since Western never asserted a claim against Agency as a direct defendant or otherwise, any liability of a third-party defendant would be to a third-party plaintiff if it were liable to plaintiff. Since Allstate is not liable here as a matter of law, it follows that its third-party complaint must fall. See Lawlor v. Cloverleaf Memorial Park, Inc., 101 N.J. Super. 134, 139 (Law Div. 1968), reversed on other grounds, 106 N.J. Super. 374 (App. Div. 1969), rev'd on other grounds, 56 N.J. 326 (1970).
Since there is no genuine dispute as to any material fact and the resolution of the issues is solely a matter of law both summary judgment motions are granted, without costs.
NOTES
[1] Allstate admits receiving notice of the accident from Agency and, subsequently, the copy of the summons and complaint.
[2] Although not in issue, the corollary may not apply. The insured owes the insurer a contractual duty of cooperation, but it may not necessarily mean a fiduciary duty. In this case there has been no assertion that the insured owed a duty to the primary carrier to advise it of the existence of any excess coverage. Such insurance could presumably have been discovered had the primary insurance carrier or its attorney asked or interviewed the insured before the case was listed for trial.
[3] As of the date of this motion (February 1976), the Peter case has apparently neither been subject to any appellate court determination nor cited in any other reported case.
[4] The California federal court relied on Crisci v. Security Ins. Co. of New Haven, Conn., 66 Cal.2d 425, 58 Cal. Rptr. 13, 426 P.2d 173 (Sup. Ct. 1967), in applying the test of "whether a prudent insurer without policy limits would have accepted the settlement offer."
[5] See Standard Accident Ins. Co. v. Pellecchia, 15 N.J. 162, 172 (1954), and Sullivan v. Naiman, 130 N.J.L. 278, 280 (Sup. Ct. 1943). See also, Connecticut Savings Bank of New Haven v. First National Bank & Trust Co. of New Haven, 138 Conn. 298. 84 A.2d 267, 270 (Sup. Ct. Err. 1951).