**WEISZHAAR FARMS, INC.; L.J. Hog Company, Inc.; Leroy Weiszhaar and Joan Weiszhaar, Appellants,**

v.

**LIVE STOCK STATE BANK, Leola, South Dakota (formerly Leola State Bank), Appellee.**

No. 17023.

Supreme Court of South Dakota.

Considered on Briefs Oct. 24, 1990.

Decided March 27, 1991.

Rick Johnson, Johnson, Eklund & Davis, Gregory, Dale A. Wein, Aberdeen, for appellants.

Robert E. Hayes, Davenport, Evans, Hurwitz & Smith, Sioux Falls, for appellee.

HENDERSON, Justice.

## PROCEDURAL HISTORY/ISSUES

This action was brought by Weiszhaar Farms, Inc., and L.J. Hog Co., Inc., on February 6, 1989. The lawsuit sought damages based on alleged bad faith actions and defamation by the Live Stock State Bank (Bank). On July 5, 1989, the trial court entered an Order granting Summary Judgment in favor of the Bank on all claims set forth in the Complaint except the

amount of judgment to be entered in favor of the Bank and the issue of value on the real property to be foreclosed on. On January 26, 1990, Final Summary Judgment was entered in favor of the Bank.

On appeal, the Weiszhaars allege that:

(1) The trial court erred when it granted Summary Judgment on the issues of the Bank's false representations and malicious and bad faith actions in dealing with the Weiszhaars; and

(2) The trial court erred in granting Summary Judgment on the issue of defamation, as the statements made by the bank officials have the appearance of being slander per se, thus raising a genuine issue of material fact which should have gone to the jury.

We affirm in part, reverse in part.

## FACTS

Weiszhaar Farms, Inc. is a grain farming and cattle operation. L.J. Hog Co., Inc. is a hog finishing operation. Leroy Weiszhaar and his wife, Joan, are principal officers in both corporations.

Weiszhaar Farms, Inc. and L.J. Hog Co., Inc., filed Chapter 11 bankruptcy petitions on September 2, 1986, with the Bank being the principal creditor of the Weiszhaar corporations at that time. The Bank was owed slightly less than $800,000.

On April 26, 1988, a confirmation hearing regarding the Weiszhaars' Chapter 11 Plan was held in a consolidated case. Both parties stipulated to treatment of the Bank debt under the Chapter 11 Plan. This stipulation was thereafter approved by the Bankruptcy Court on May 3, 1988, which set forth the following payments:

[T]he Debtors shall pay unto Live Stock State Bank the following sums:

(a) Not later than 5:00 o'clock p.m. on May 2, 1988, the sum of $80,000;

(b) Not later than 5:00 o'clock p.m. on June 10, 1988, the sum of $105,000; and

(c) Not later than 5:00 o'clock p.m. on June 25, 1988, the sum of $500,000, it being further provided that not later than 5:00 o'clock on May 27, 1988, the Bank shall have been provided with a loan commitment for a loan to the Debtors of a net sum not less than $500,000.

Subsequently, the Weiszhaars were unable to fully meet their obligations to the Bank. Namely, they were unable to make the $500,000.00 payment due June 25, 1988.

On July 10, 1988, at the request of the Weiszhaars, the before mentioned agreement was renegotiated. This modified stipulation provided:

3. The Debtors are unable to perform Section 1(c) of the Court's prior Order of May 3, 1988, thereby entitling Live Stock State Bank to the immediate possession of the personal property, including livestock and machinery, of the Debtors, and to modification of any Post–Confirmation Stay or Injunction;

4. *In lieu of performance of the aforesaid section* of the Court's prior Order, it is agreed as follows (emphasis supplied ours):

(a) Not later than the close of business August 29, 1988, the Debtors shall cause to be paid to Live Stock State Bank the sum of $320,000 in return for which Live Stock State Bank shall satisfy and release its security interest in any and all personal property of the Debtors;

(b) Not later than the close of business August 29, 1988, the Debtors, in cooperation with Live Stock State Bank, shall obtain a loan secured by a lien on all real estate of the Debtors in the sum of not less than $265,000.00, which sum, along with interest at the rate of 11 percent per annum, shall be repaid over a term not to exceed fifteen (15) years, the entirety of which loan shall be the subject of a ninety (90) percent guarantee of payment by the United States of America, Farmers Home Administration;

(c) Within seven (7) days from the execution of this Stipulation, the Bank will receive a written accounting of all livestock sales made during calendar year 1988, through and including the date of execution of this Stipulation;

(d) From and after the date of this Stipulation, and within five (5) business days from the date upon which sales are made, the Bank shall receive directly from the Debtors an accounting of all sales of livestock made by the Debtors;

(e) The Bank shall not be obligated to release, subordinate or otherwise waive or impair its lien in personal property of the Debtors until such time as it has received the payment of $320,000.00, and has closed the loan of $265,000.00 as described herein.

On October 14, 1988, the attorney for the Bank filed an affidavit with the Bankruptcy Court representing the Weiszhaars' inability to comply with paragraphs 4(a) and (b) of the modified stipulation. On October 17, 1988, the Bankruptcy Court ordered the surrender of all personal property securing the Bank's debt to the Bank for liquidation. Subsequently, the Bank removed livestock collateral from the Weiszhaars' premises for the purpose of liquidation. On October 24, 1988, prior to the time of the sale of the property, the Bank was contacted by the Weiszhaars to request a postponement of the livestock sale. The Bank agreed to delay the sale of the livestock for seven (7) days. The Weiszhaars were unable to fulfill the requirement of the July 10, 1988, stipulation during this seven (7) day voluntary stay.

On October 31, 1988, the Weiszhaars filed an order to modify the amended Chapter 11 Plan and a proposed modified Chapter 11 Plan. The proposed order would have granted a motion to modify the amended Chapter 11 Plan and stayed implementation of the October 17, 1988 Order. The proposed modified plan would have allowed the Weiszhaars until December 10, 1988, to cure its default under the stipulation of July 10, 1988. The Bankruptcy Court refused this request.

On October 31, 1988, Chapter 12 bankruptcy petitions were filed in the name of Leroy Weiszhaar, L.J. Hog Co., Inc., and Weiszhaar Farms, Inc. This triggered automatic stays under 11 U.S.C. § 362 which prevented the Bank from liquidating its livestock and contravened the Bankruptcy Court's earlier order of October 17, 1988.

On November 3, 1988, the Bank filed motions for modification of stay and for dismissal of the Chapter 12 bankruptcies. The Bankruptcy Court set a November 7, 1988, date to hear the Bank's motions.

At the November 7 hearing, extensive argument was heard, but no testimony or other evidence was presented. The Bankruptcy Court determined that the Weiszhaars were unable to perform under the July 10, 1988, stipulation and were unable to so perform as of November 7, 1988. The Bankruptcy Court also determined that the Weiszhaars should be unable to modify their confirmed amended Chapter 11 Plan because it had been substantially consummated by stipulation evidenced by the Order entered May 3, 1988. Further, the Bankruptcy Court determined that the Weiszhaars were without authority to convert their Chapter 11 bankruptcies to Chapter 12.

## DECISION

I. *The trial court properly granted summary judgment on the issues of the Bank's alleged false representations and malicious and bad faith actions.*

 Summary judgment proceedings are not a substitute for trial and the remedy is authorized only when the movant is entitled to judgment as a matter of law because there are no issues of material fact. *Caneva v. Miners & Merchants Bank*, 335 N.W.2d 339 (S.D.1983). The moving party has the burden to clearly show that no genuine issues of material fact exist. *Klatt v. Continental Ins. Co.*, 409 N.W.2d 366 (S.D.1987). The nonmoving party opposing a motion for summary judgment must present specific facts which demonstrate the existence of genuine, material issues for trial; mere allegations are not sufficient to preclude summary judgment. *Laber v. Koch*, 383 N.W.2d 490 (S.D.1986).

It is the Weiszhaar's position that the Bank made false representations; acting maliciously and in bad faith violating its

commitments in claiming the entire $585,000.00 (rather than $500,000.00). Additionally, the Weiszhaars assert that the Bank failed to fulfill its obligation to complete the $265,000 real estate loan which it promised to grant; also, the Bank failed to notify their corporations of the fact that the Bank was going to default on their commitment in a time sufficient to enable their corporations to secure another loan. The trial court disagreed, granting summary judgment in favor of the Bank, stating:

It was stipulated and ordered by the bankruptcy court "that in the event of the terms of this order [May 3, 1988] are not performed, and the bank is required to proceed to exercise available remedies in state court, the bank shall be entitled to seek the collection of the full indebtedness owed it, which is the sum of $819,387.84 as of April 26, 1988." The Bank later agreed for an extension of this matter to allow a new arrangement of payment which increased the indebtedness by $85,000.00 but eased the manner of payment for a half million dollars of debt. Later, the Bank extended by agreement, the obligations until October of 1988. The Court can find no material issue in the area of completing the agreements. In fact, it is quite clear that the debtors never met the conditions. Therefore, the Bank is entitled to go back to the original form as previously stated in Judge Hoyt's order approving stipulations.

After a thorough reading of the pertinent stipulations, we are of the opinion that the Weiszhaars' argument is bottomed on a challenge to the interpretation of the stipulation they entered into. The Weiszhaars already attempted to challenge the interpretation of the July 10, 1988, stipulation in Bankruptcy Court on at least three occasions. We stated in *Warren Supply v. Duerr, Pliley, Thorsheim Dev.*, 355 N.W.2d 838 (S.D.1984), that one who enters into a stipulation or agreement for judgment or who has taken a position in judicial proceedings may not later challenge the judgment or take a position inconsistent with his earlier position. *See generally*, 28 Am.Jur.2d Estoppel & Waiver, §§ 568–70;

*Gall v. South Branch Nat. Bank of S.D.*, 783 F.2d 125 (8th Cir.1986). To permit the Weiszhaars to now argue that the Bank's behavior in restructuring the stipulation was malicious or in bad faith, would be counter to the spirit of the stipulation proposed by the Weiszhaars themselves. Both parties believed that the July 10, 1988, renegotiated stipulation would be the answer to the Weiszhaars' inability to comply with the first stipulation. However, the Weiszhaars never met the conditions of this stipulation. Therefore, we affirm the trial court's grant of summary judgment on the false representations and malicious and bad faith actions.

II. *The trial court erred in granting summary judgment on the issue of defamation.*

In reviewing the trial court's order granting summary judgment, we premise our decision on the principle that affirmance of such a judgment is proper if there exists any basis which would support the trial court's ruling. *Uken v. Sloat*, 296 N.W.2d 540 (S.D.1980). As mentioned earlier, the burden of proof is on the movant to show clearly that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Koch, supra.* The nonmoving party opposing a motion for summary judgment must present specific facts which demonstrate the existence of genuine, material issues for trial; mere allegations are not sufficient to preclude summary judgment. *Mackintosh v. Carter*, 451 N.W.2d 285, 286 (S.D.1990).

South Dakota law requires that "[e]very person is obligated to refrain from infringing upon the right of others not to be defamed." SDCL 20–11–1. Weiszhaars claim that the Bank failed in this obligation. The affidavit of Leroy Weiszhaar sets forth that between October 19, 1988 and October 21, 1988, the Bank, through its authorized agents, began making false defamatory statements to the effect that the Weiszhaars unlawfully and fraudulently sold cattle mortgaged to the Bank. Weiszhaar's affidavit recites that these

false and defamatory statements were published and became widely circulated in the Leola, South Dakota area, and that one of the Bank agents called Sheriff Kuntz to request that he watch the Weiszhaar Farm for any unauthorized removal of livestock.

As was clear from the deposition of Thomas J. Heibel, Chairman of the Board of the Bank, he is the "source" of these alleged false and defamatory statements, all of which apparently resulted from his confusing Weiszhaar with a different "Leroy."

When questioned at his deposition about the matter, he stated:

A (By Mr. Heibel): Well, in a small town I'm sure you know about it, everybody has coffee or breakfast in the morning and we were sitting there and Elmer Schook mentioned that he had been to Pipestone, Minnesota with Leroy the day before. And I didn't say anything, I just listened. I'm usually not too wide awake in the morning anyway. I just listened and I assumed it was Leroy Weiszhaar. His daughter is married to one of the Weiszhaar boys.

Q (By Mr. Johnson): Schook's daughter?

A Yes.

. . . . .

Q When you heard that did you get upset a little bit?

A No, not particularly. I didn't say anything. I just went back to the bank and I informed [Bank officers Boyd D. Hopkins and Duane Podoff].

When Heibel was asked whether he repeated that rumor to anybody or in front of other bank employees, he stated: "The girls wouldn't pay any attention."

Boyd Hopkins, the Bank's President, wrote Pipestone Auction Market to advise them that the Weiszhaars were customers of the Bank who "may have or may yet sell cattle at your barn," and that "we have a lien . . . on their cattle."

The Bank's accusations appear to be unfounded because the "LeRoy" that Elmer Schook referred to was not Leroy Weiszhaar, but another man named LeRoy Schook.

Such statements have the appearance of being slander per se. SDCL 20–11–4(1). A question of fact arises as to whether such statements harmed the Weiszhaars in respect to their business. SDCL 20–11–4(3).

In viewing this evidence most favorably to the Weiszhaars and resolving all reasonable doubts against the Bank, it is clear that the evidence presented was sufficient to raise genuine issues of material fact which should have gone to the jury. *Groseth International Inc. v. Tenneco, Inc.*, 410 N.W.2d 159, 172 (S.D.1987); *Bego v. Gordon*, 407 N.W.2d 801, 812 (S.D.1987). Clearly the trial court erred in granting summary judgment. Summary judgment on the issue of defamation should therefore be reversed and remanded for trial.

Affirmed in part, reversed in part.

MILLER, C.J., WUEST and SABERS, JJ., and MORGAN, Retired Justice, concur.

AMUNDSON, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.