MARK, INC., d/b/a **BUDGET RENT–A–CAR, Individually and as Assignee of Rushmore Leasing, Inc. and Carolyn Mollers, Plaintiffs,**

v.

**MAGUIRE INSURANCE AGENCY, INC., d/b/a MAGUIRE INSURANCE GROUP, Defendant,**

and

**PROVIDENCE WASHINGTON INSURANCE COMPANY, Defendant, Third–Party Plaintiff and Appellant,**

v.

**BLACK HILLS AGENCY, INC. and Dakota Claims Service, Third–Party Defendants and Appellees.**

No. 18232.

Supreme Court of South Dakota.

Considered on Briefs Jan. 12, 1994.

Decided June 8, 1994.

Ronald R. Kappelman, Rapid City, for appellant.

Wayne F. Gilbert of Johnson Huffman, Rapid City, for appellee Black Hills Agency, Inc.

Mark Marshall of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for appellee Dakota Claims Service.

SEVERSON, Circuit Judge.

### ACTION

This is an appeal by third-party plaintiff, Providence Washington Insurance Company (Providence), from a grant of summary judgment dismissing a third-party complaint against third-party defendants Black Hills Agency, Inc. (Black Hills) and Dakota Claims Service. We affirm.

### FACTS

At the time of loss, Mark, Inc., d/b/a Budget Rent–A–Car was in the business of leasing vehicles to the public. An insurance policy issued by Providence was procured to cover damage to the vehicles owned by Mark, Inc. The policy contained a $1000 per vehicle, per occurrence deductible for hail damage.

Maguire Insurance Agency, Inc. (Maguire) was the general agent for Providence and was responsible for underwriting risks, determining appropriate rates for premiums, adjusting losses, settling claims and paying or denying losses. A broker agreement ex-

isted between Maguire and Black Hills. Black Hills was an independent contractor and was paid a commission for each policy it sold. Black Hills procured the policy between Providence and Mark, Inc.

During the summer of 1991, three hail storms hit Rapid City, South Dakota, on May 11, June 9, and June 18. After each storm, Mark, Inc. notified Black Hills that hail damage occurred. Black Hills, in turn, hired Dakota Claims Service to appraise the losses. Dakota Claims Service proceeded to appraise the losses at the convenience of Mark, Inc., when the vehicles were returned at the end of a lease.

To avoid duplication of claims Maguire requested that Black Hills defer sending claims notices until it received appraisals from Dakota Claims Service. In appraising the losses, Dakota Claims Service put May 11, the day it opened the account, on all of the reports. Neither Dakota Claims Service nor Black Hills notified Maguire or Providence of the three hail storms, nor did they attempt to pinpoint the location of the vehicles during each hail storm.

Providence received eleven (11) damage appraisals on June 29, 1991 from Black Hills and paid Mark, Inc. $7,750.76. On September 5, 1991, Providence received thirteen (13) more damage appraisals and paid Mark, Inc. an additional $9,396.47. On December 19, 1991, Black Hills sent Providence fifty-three (53) damage appraisals and on January 7, 1992 fifty-four (54) more damage appraisals were sent. Mark, Inc. brought suit to recover the hail damage losses from the appraisals submitted December 19, 1991 and January 7, 1992 which Providence refused to pay.

Mark, Inc. amended its complaint and added Maguire to the suit. Providence then brought a third-party action against Black Hills and Dakota Claims Service for indemnity, maintaining that they were negligent in failing to notify Providence of the number and severity of hail storms. The trial court granted Black Hills' and Dakota Claims Service's motions for summary judgment, holding they owed no legal duty to Providence which they did not perform.

## ISSUE

DID BLACK HILLS OR DAKOTA CLAIMS SERVICE OWE PROVIDENCE OR MAGUIRE A LEGAL DUTY WHICH WOULD SUPPORT A CLAIM FOR INDEMNITY?

A party is entitled to summary judgment on questions of law "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." SDCL § 15–6–56(c); *Weiszhaar Farms v. Live Stock State Bank,* 467 N.W.2d 752, 754 (S.D.1991). The court must view the evidence most favorably to the non-moving party and resolve reasonable doubts about the facts in its favor. *Koeniguer v. Eckrich,* 422 N.W.2d 600 (S.D.1988). The moving party must clearly show that no genuine issue of material fact exists. *Weiszhaar Farms Inc.,* 467 N.W.2d at 754.

The party opposing a motion for summary judgment must establish the specific facts which show that a genuine, material issue for trial exists. *Anderson v. Production Credit Ass'n,* 482 N.W.2d 642, 644 (S.D. 1992). Mere allegations are not sufficient to preclude summary judgment. *Weiszhaar Farms, Inc.,* 467 N.W.2d at 754.

Negligence is the breach of a duty owed to another, the proximate cause of which results in an injury. *Laber v. Koch,* 383 N.W.2d 490, 492 (S.D.1986) (citations omitted). Summary judgment is proper in negligence cases if it is determined as a matter of law that no duty exists. *Clauson v. Kempffer,* 477 N.W.2d 257, 258 (S.D.1991) (citing *Erickson v. Lavielle,* 368 N.W.2d 624, 627 (S.D.1985)).

This Court has previously recognized a cause of action for economic damage resulting from professional negligence beyond the strictures of privity of contract. *Mid–Western Elec. v. DeWild Grant Reckert,* 500 N.W.2d 250, 254 (S.D.1993); *Limpert v. Bail,* 447 N.W.2d 48, 51 (S.D.1989). Whether a duty exists depends on the foreseeability of

injury. *Mid–Western Elec.*, 500 N.W.2d at 254.

■ The only evidence Providence presented of a legal duty on the part of Black Hills or Dakota Claims Service, consisted of an affidavit by Maguire's claims supervisor, which stated, "good and professional claims handling procedures dictate that the location of the vehicles be established at the time of the alleged loss." No specific facts or evidence were presented that such a duty to report the number and severity of hail storms or the location of the vehicles existed as a result of the engagement of Dakota Claims Service as an appraiser.

> SDCL 15–6–56(e) requires the opposing party to be diligent in resisting a motion for summary judgment, and mere general allegations and denials which do not set forth specific facts will not prevent the issuance of a judgment.

*Home Fed. Sav. & Loan v. First Nat. Bank,* 405 N.W.2d 655, 658 (S.D.1987) (quoting *Hughes–Johnson Co. v. Dakota Midland Hospital,* 86 S.D. 361, 364, 195 N.W.2d 519, 521 (1972)).

There is no evidence in the record of a history of reporting the number or severity of hail storms by Black Hills and Dakota Claims Service. There is also no evidence that Providence requested such a report from them. In addition, other than the conclusions in the affidavit of Maguire's claims supervisor, there is no evidence as to what skill and care were ordinarily exercised by others in the insurance profession.

It is uncontroverted that Dakota Claims Service was hired simply to appraise or list the damage to the vehicles. It had no duty to monitor and assess risks since that was Maguire's duty as the adjuster.

Black Hills, as the broker, was the middleman between the insured and Providence and Maguire. Black Hills' duties as set forth in the broker agreement, included selling insurance policies. As an adjunct to that duty, Black Hills submitted the appraisals and claims notices to Maguire. A New Jersey court, finding no authority to impose a duty of notification on a broker, held that the insurance broker was not required to notify the primary insurance carrier that an excess carrier existed. *Western World Ins. Co. v. Allstate Ins. Company,* 140 N.J.Super. 338, 356 A.2d 83, 86 (N.J.Super.Ct.Law Div.1976), modified, *Western World Ins. Co. v. Allstate Ins. Co.,* 150 N.J.Super. 481, 376 A.2d 177, 180 (N.J.Super.Ct.App.Div.1977). Likewise, we have found no evidence or authority which would support a legal duty on the part of Black Hills to notify Providence of the circumstances of the loss.

■ Providence's complaint seeks indemnity for any amount it becomes obligated to pay to Mark, Inc. "Indemnity is a remedial measure which is invoked to secure the right of the first party to be reimbursed by the second party for the discharge of a liability which, as between the parties, should equitably be discharged by the second party." *Ebert v. Fort Pierre Moose Lodge # 1813,* 312 N.W.2d 119, 122 (S.D.1981). Indemnity shifts the entire burden for loss on another party. *Id.* at 123. Indemnity is generally not allowed, except under the following limited situations:

> (1) derivative or vicarious liability; (2) action at direction of, and for, another; (3) breach of duty to indemnify; (4) failure to discover negligence of another; and (5) express contract.

*Id.*

"Indemnification, ... can only be invoked when the party seeking indemnification can show that liability should properly be shifted to the second party." *Manning v. First Federal Sav. & Loan,* 441 N.W.2d 924, 926 (S.D.1989). Providence's liability to Mark, Inc. arises from an obligation under an insurance policy. Providence has not set forth any legal basis which would support the shift of its liability to Dakota Claims Service or Black Hills under a claim for indemnity.

We, therefore, conclude that the trial court correctly granted summary judgment in favor of Black Hills and Dakota Claims Service.

MILLER, C.J., and WUEST and AMUNDSON, JJ., concur.

SABERS, J., dissents.

SEVERSON, Circuit Judge, for HENDERSON, J., disqualified.

SABERS, Justice (dissenting).

The majority hangs its hat on the fact that:

> The only evidence Providence presented of a legal duty on the part of Black Hills or Dakota Claims Service, consisted of an affidavit by Maguire's claims supervisor, which stated, "good and professional claims handling procedures dictate that the location of the vehicles be established at the time of the alleged loss."

The defect in the majority's thinking is that, for summary judgment purposes, *that* affidavit is enough. It should be obvious that good claims handling procedure requires that the location of the vehicles be established at the time of the alleged loss. This is especially so in handling automobile hail damage claims. Who would arrange for or hire an adjustor or appraiser to do a "sloppy" or "partial" job. As the majority states, "[n]egligence is the breach of a duty owed to another, the proximate cause of which results in an injury."

In *Mid–Western Elec., Inc. v. DeWild Grant Reckert & Assoc. Co.,* 500 N.W.2d 250 (S.D.1993), we held that a cause of action exists for economic damage for professional negligence beyond the structures of privity of contract. Although the majority cites *Mid–Western,* it promptly by-passes same by stating "whether a duty exists depends on the foreseeability of injury." Obviously, an insurance company will be injured if the loss is improperly adjusted or appraised. Therefore, foreseeability is a given and a legal duty exists.

In *Limpert v. Bail,* 447 N.W.2d 48 (S.D. 1989), we held that a genuine issue of material fact existed as to whether a veterinarian breached his duty to properly test cattle, and stated:

> Even if the contractual relationship was between Rotenberger [veterinarian] and Limpert [owner and seller], rather than Rotenberger and Bail [buyer], a breach by Rotenberger of the duty owed to Limpert could still render Rotenberger liable to

Bail. As explained by the court in *Layman, supra:*

> Where one undertakes by contract to perform a certain service and is chargeable with the duty of performing the work in a reasonably proper and efficient manner, and injury occurs to a blameless person, the injured person has a right of action directly against the offending contractor which is not based on any contractual obligation but rather on the failure of such contractor to exercise due care in the performance of his assumed obligation.

[*Layman v. Braunschweigische Maschinenbauanstalt, Inc.,* 343 N.W.2d 334, 341 (N.D.1983) ] (quoting 57 Am.Jur.2d *Negligence* § 50). Such an imposition of liability is consistent with SDCL 20–9–1, which provides in part: "Every person is responsible for injury to the person, property, or rights of another caused by his ... want of ordinary care or skill[.]" Rotenberger had a duty to exercise due care in the testing of the cattle. If in turn, Rotenberger allowed Limpert to do some of the testing, it would not absolve him from his responsibility to Bail. Thus, a legal duty and genuine issues of material fact exist. (citations omitted).

*Limpert,* 447 N.W.2d at 51–52.

In this case, Dakota Claims and Black Hills had a duty to exercise due care in the appraising and adjusting of the hail damage to the vehicles. Want of ordinary care would obviously produce injury to Providence. Therefore, the injury was clearly foreseeable and a legal duty and genuine issues of material fact exist. We should not overlook such simple matters in our rush to judgment, especially when the constitution guarantees people their day in court.