1998 SD 60

**Bradley W. PETERSON, Plaintiff and Appellant,**

v.

**SPINK ELECTRIC COOPERATIVE, INC., Defendant and Appellee.**

**No. 20156.**

*Supreme Court of South Dakota.*

Argued April 27, 1998.

Decided June 10, 1998.

Kent Shelton and Gerald L. Kaufman, Jr. of Churchill, Manolis, Freeman, Kludt, Kaufman & Shelton, Huron, for plaintiff and appellant.

Russell H. Battey of Gillette, Battey & Gillette, Redfield, for defendant and appellee.

GILBERTSON, Justice.

[¶ 1.] Bradley Peterson (Bradley) appeals from a grant of summary judgment in favor of Spink Cooperative Inc. (Spink). We affirm.

## FACTS AND PROCEDURE

[¶ 2.] During the summer of 1990, Bradley's father, Floyd Peterson (Floyd), experienced problems with a 110 volt motor which supplied power to an auger used to unload grain from a bin on his farm. The motor had been blowing fuses. Floyd was not able to determine the source of the problem so he replaced the original 110 volt motor with a 220 volt motor. A 220 volt extension cord was "pig tied" to the 220 volt motor and plugged into the power supply. The problems persisted as fuses continued to blow. Floyd then called Spink and requested they make a service call because there was a "lack of power to his motor" and for Spink to do "[w]hatever it took to fix [the problem]. If there was a power shortage or whatever was the matter." [1]

[¶ 3.] Spink sent two of its employees to Floyd's farm to fix the power problem and get the motor working. Floyd was not present when the employees arrived but had directed his 30 year old son, Bradley, to tell the employees where the problem was and to "let them handle it." Both Bradley and Floyd believed this was the first time these two particular employees had been to this farm.

[¶ 4.] Shortly after the employees arrival, they detected and replaced a blown fuse. Considering the power problem resolved, the employees asked Bradley, who had just arrived, to plug an energized extension cord into the motor on the other side of the grain bin from where they were working on the fuse panel. Bradley picked up the motor cord and extension cord but before he could connect the two ends, he received a shock and fell to the ground.

[¶ 5.] While Bradley admitted that at that point he did not consider the shock caused any injuries that would merit medical attention, he admits being talked into going to the doctor by the two employees present at the site despite "feeling all right" at the time. Bradley then telephoned the Huron Clinic from his father's house and after describing the accident and his symptoms was told not to come in. Although Bradley did not have any burn marks or any visible spots where the electricity had passed through his body, he did notice a small spot on his thumb.

[¶ 6.] The cause of the electric shock was subsequently determined to be an internal defect or short in the wiring of Floyd's extension cord. It is undisputed that a visual inspection of the cord would have failed to detect the defect. Neither Bradley nor Floyd suspected the cord as the source of the problem or recalled giving any information to Spink or the two employees indicating there might be a problem with the cord.

[¶ 7.] On December 16, 1991, Bradley brought a personal injury negligence suit against Spink seeking $250,000 as compensation for pain and suffering, physical injuries, and loss of past and future income. Peterson claimed Spink was negligent in failing to properly determine the cause of the electrical problem prior to requesting Bradley to plug in the extension cord. The trial court granted Spink's motion for summary judgment after concluding, as a matter of law, that Spink did not owe Bradley a duty because it was not foreseeable that Bradley could be injured by the latent defect in the cord when the employees asked him to plug it in. Bradley appeals claiming the trial court erred in granting summary judgment in favor of Spink.

## STANDARD OF REVIEW

[¶ 8.] The standard of review for the grant or denial of a summary judgment motion in lawsuits involving tort claims is well established:

Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." SDCL 15–6–56(c). We will affirm only when there are no genuine issues of material fact and

---

1. As the time span between the telephone call and Floyd's deposition was nearly five years, Floyd's memory of this telephone conversation is quite vague. He does not remember the name of the person he had spoken to, what was specifically said, or whether he had spoken to a male or a female employee of Spink.

the legal questions have been correctly decided. *Bego v. Gordon*, 407 N.W.2d 801, 804 (S.D.1987). All reasonable inferences drawn from the facts must be .viewed in favor of the non-moving party. *Morgan v. Baldwin*, 450 N.W.2d 783, 785 (S.D.1990). The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law. *Wilson v. Great N. Ry. Co.*, 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968).

*Julson v. Federated Mut. Ins. Co.*, 1997 SD 43, ¶ 5, 562 N.W.2d 117, 119 (quoting *Ford v. Moore*, 1996 SD 112, ¶ 7, 552 N.W.2d 850, 852).

[¶ 9.] Whether Spink owed Bradley a duty is a question of law subject to de novo review. *Fisher Sand & Gravel Co. v. South Dakota*, 1997 SD 8, ¶ 12, 558 N.W.2d 864, 867; *Poelstra v. Basin Elec. Power Coop.*, 545 N.W.2d 823, 825 (S.D.1996); *Bland v. Davison County*, 507 N.W.2d 80, 81 (S.D. 1993) ("[W]e must determine if a relationship exists between the parties such that the law will impose upon the defendant a legal obligation of reasonable conduct for the benefit of the plaintiff.") (citations omitted); *Trammell v. Prairie States Ins. Co.*, 473 N.W.2d 460, 462 (S.D.1991) (citations omitted).

[¶ 10.] Spink relies exclusively on the depositions of the Petersons in support of its motion for summary judgment. Contrary to the argument of Spink, this does not in all cases, turn the case into a legal question for the court. In appropriate cases there still may be a jury question as to whether the defendant's conduct, as he described it, compares to the conduct of the reasonable man.[2] However, Bradley cannot claim a version of the facts more favorable to his position than testified to by him.[3] *Westover v. East River Elec. Power Coop. Inc.*, 488 N.W.2d 892, 898 (S.D.1992).

## ANALYSIS AND DECISION

[1, 2] [¶ 11.] "Questions of negligence, contributory negligence and assumption of the risk are for the jury in all but the rarest of cases so long as there is evidence to support the issues." *Bauman v. Auch*, 539 N.W.2d 320, 325–26 (S.D.1995) (citing *Westover*, 488 N.W.2d at 896 (S.D.1992); *Gerlach v. Ethan Coop. Lumber Ass'n*, 478 N.W.2d 828, 830 (S.D.1991)). "It is only when reasonable men can draw but one conclusion from facts and inferences that they become a matter of law and this rarely occurs." *Mitchell v. Ankney*, 396 N.W.2d 312, 313 (S.D.1986) (citing *Wilson, supra* ).

[¶ 12.] "Negligence is the breach of a duty owed to another, the proximate cause of which results in an injury." *Muhlenkort v. Union Co. Land Trust*, 530 N.W.2d 658, 662 (S.D.1995) (quoting *Mark, Inc. v. Maguire Ins. Agency, Inc.*, 518 N.W.2d 227, 229 (S.D. 1994)). Summary judgment is proper in negligence cases if it is determined as a matter of law that no duty exists. *Mark*, 518 N.W.2d at 229 (citing *Clauson v. Kempffer*, 477 N.W.2d 257, 258 (S.D.1991)); *Erickson v. Lavielle*, 368 N.W.2d 624, 627 (S.D.1985).

[¶ 13.] This is not the first occasion we have had to apply the doctrine of negligence to the subject matter of electricity. In *Westover* we held:

> The distribution of electrical energy is a highly dangerous activity and anyone doing so is under a duty to exercise ordi-

---

2. The words "reasonable man" denote a person who exercises those qualities of attention, knowledge, intelligence and judgment which society requires of its own members for the protection of their own interests and the interests of others. *Westover v. East River Elec. Power*, 488 N.W.2d 892, 897 n. 11 (S.D.1992) (citations omitted).

3. In a summary judgment proceeding the burden of proving that no genuine issue of material fact rests upon the movant. "[F]acts asserted by the party opposing the motion, if supported by affidavits or other evidentiary material, are regarded as true." 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2727 (2d ed.1983). At the same time, the party opposing summary judgment "may not rest on the mere allegations ... in his pleading. He must present evidentiary matter showing that there is a genuine issue of material fact that is worth bringing to trial...." *Id.* at § 2721. With these fundamental rules in mind, we note that during the five years this suit was pending, Peterson did not depose any Spink employee or representative. Therefore, the record upon review only contains the depositions of Peterson and his father along with Spink's answers to interrogatories.

nary and reasonable care under all the circumstances to prevent injury to persons and property. This requires care commensurate with the danger involved consistent with the practical operation of the business.

488 N.W.2d at 898 (citing *Ward v. LaCreek Elec. Ass'n,* 83 S.D. 584, 163 N.W.2d 344, 347 (S.D.1968)). *See also Kuper v. Lincoln–Union Elec. Co.,* 557 N.W.2d 748, 756 (S.D. 1996). In *Kuper,* we specifically rejected the argument that this standard should be abandoned and instead a greater duty be placed on an electric company, that being "the highest duty of care" standard. *Id.* The standard remains "ordinary and reasonable care under all the circumstances[.]" *Id.*

[¶ 14.] "Foreseeability is a determinant of the duty element in the law of negligence." *Nicholas v. Tri–State Fair & Sales Ass'n,* 82 S.D. 450, 456, 148 N.W.2d 183, 186 (1967). "Whether a common-law duty exists depends on the foreseeability of injury." *Wildeboer v. South Dakota Jr. Chamber of Commerce Inc.,* 1997 SD 33, ¶ 14, 561 N.W.2d 666, 669 (quoting *Poelstra v. Basin Elec. Power Coop.,* 1996 SD 36, ¶ 16, 545 N.W.2d 823, 826-27; *accord Mid–Western Elec. Inc. v. DeWild, Grant, Reckert & Associates Co.,* 500 N.W.2d 250, 254 (S.D.1993)). "The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or others within the range of apprehension." *Nicholas, supra,* (quoting Judge Cardozo, *Palsgraf v. Long Island R. Co.,* 248 N.Y. 339, 162 N.E. 99, 100 (1928)). "[N]o one is required to guard against or take measures to avert that which a reasonable person under the circumstances would not anticipate as likely to happen." *Wildeboer,* 1997 SD 33 at ¶ 18, 561 N.W.2d at 669 (quoting *Poelstra,* 1996 SD 36 at ¶ 16, 545 N.W.2d at 826–27 (citation omitted)).

[¶ 15.] Some confusion exists in the law of torts because foreseeability of harm is considered an element of both duty and proximate cause under South Dakota law. "However, foreseeability for purposes of establish-ing a duty is not invariably the same as the foreseeability relevant to causation." *Poelstra,* 1996 SD 36 at ¶ 18, 545 N.W.2d at 827 (citation omitted). "[T]he latter essentially is to be viewed as of the time when the damage was done while the former relates to the time when the act or omission occurred." *Id.* "Negligence must be determined upon the facts as they appeared at the time, and not by a judgment from actual consequences which were not then to be apprehended by a prudent and competent man." 57A Am. Jur.2d *Negligence* § 136.

[¶ 16.] As a result, in determining whether Spink owed a duty to Bradley, we must consider the foreseeability of harm at the time the Spink employees requested Bradley to plug in the extension cord. The foreseeability inquiry requires us to consider the circumstances and the knowledge Spink possessed leading up to the accident.

[¶ 17.] Here there are no company manuals which would be a source of a standard of conduct to address the question of duty. In *Westover,* we affirmed a finding of negligence on the part of East River Electric in large part for its failure to follow its own manuals and procedures in numerous instances.[4] Neither are there any allegations of violations of safety statutes the violation of which are negligence. *Poelstra,* 1996 SD at ¶¶ 10-14, 545 N.W.2d at 826; *Bell v. East River Elec. Power Coop.,* 535 N.W.2d 750 (S.D.1995). Nor was there any agreement between the Petersons and Spink which created a duty by contract. *See Bell,* 535 N.W.2d at 755.

Negligence is the breach of a legal duty. It is immaterial whether the duty is one imposed by the rule of the common law requiring the exercise of ordinary care or skill not to injure another, or is imposed by a statute designed for the benefit of a class of persons which included the one claiming to have been injured as the result of non-performance of the statutory duty. The measure of legal duty in the one case is to be determined upon common law princi-

---

4. "East River's failure to follow its own safety procedures, coupled with the apparent lack of supervision and warnings which would inform the plaintiff of the danger, give the jury a factual justification for findings plaintiff's injury was a foreseeable result mainly because of East River's conduct." *Westover,* 488 N.W.2d at 900.

ples, while in the other the statute fixes a standard by which the fact of negligence may be determined.

*Lovell v. Oahe Elec. Coop.*, 382 N.W.2d 396, 398 (S.D.1986) (citing *Albers v. Ottenbacher*, 79 S.D. 637, 641, 116 N.W.2d 529, 531 (1962)).[5] Thus, we analyze the facts of this case under common law principles of negligence. *Id.*

[¶ 18.] This case appears to be unique in our case law concerning electricity as here all the electrical equipment was owned by and in the possession of the plaintiff and his family rather than the electrical company. As such our analysis of the facts focuses upon the information given to Spink when Floyd called to request service. Floyd merely indicated there was a "lack of power to his motor" and a "power shortage" was perhaps the cause. Floyd did not convey any information to Spink that the electrical problem could have originated between the meter box and the nonworking motor. Furthermore, since Floyd had not detected the hidden short in the extension cord, a cord he had exclusive control over, he could not have given sufficient information to raise this possibility to Spink. The two employees arrived at the farm with the purpose of getting the motor running. Upon their arrival they detected a blown fuse and replaced it.

[¶ 19.] Neither Floyd nor Bradley conveyed any information to the employees that the blown fuse was the result of the problem rather than the cause.[6] Therefore, the employees believed the problem was fixed and from the control panel on one side of the grain bin asked Bradley to plug in the cord on the other side. Bradley argues that somehow Spink should have foreseen the possibility of injury, however, "[r]easonable foresight, rather than prophetic vision, is the law's standard." 57A Am.Jur.2d *Negligence* § 138. As previously noted, "no one is required to guard against or take measures to avert that which a reasonable person under the circumstances would not anticipate as

likely to happen." *Wildeboer*, 1997 SD 33 at ¶ 18, 561 N.W.2d at 669. Moreover, "if the injury could not have been foreseen, it is to be attributed, not to the actor, but to the accident.... One may not be said to be negligent because he fails to make provision against an accident which he could not be reasonably expected to foresee." 57A Am. Jur.2d *Negligence* § 138 (collecting cases).

[¶ 20.] In this case, it is undisputed that Floyd's defective extension cord, rather than any act of Spink employees, made the situation hazardous. "The position of [Bradley] would in effect impose strict liability upon the Coop and make it an insurer for the safety of the user. This we have declined to do." *Lovell*, 382 N.W.2d at 398 (citing *Ward*, 83 S.D. at 590–91, 163 N.W.2d at 347). *See also Ashby v. Northwestern Public Service*, 490 N.W.2d 286, 290 (S.D.1992). After examination of the record in a light most favorable to Bradley, we agree summary judgment in favor of Spink was proper. *Julson, supra.*

[¶ 21.] Affirmed.

[¶ 22.] MILLER, C.J., and AMUNDSON and KONENKAMP, JJ., concur.

[¶ 23.] SABERS, J., dissents.

SABERS, Justice (dissenting).

[¶ 24.] I dissent. The majority opinion states, "[i]n appropriate cases there still may be a jury question as to whether the [defendant's] conduct ... compares to the conduct of the reasonable man." ¶ 10. I submit that whether the defendant breached the standard of care is nearly *always* a question for the jury. "Summary judgment is generally not feasible in negligence cases because the standard of the reasonable man must be applied to conflicting testimony.... It is only when the evidence is such that reasonable men can draw but one conclusion from facts and inferences that they become a matter of law and this occurs rarely." *Wildeboer v. South Dakota Junior Chamber of Com-*

---

5. Also absent from the record is any expert testimony in support of Bradley's proposition concerning the extent of the duty he was owed by Spink under these circumstances. *Lovell*, 382 N.W.2d at 402 (Henderson, J. dissenting).

6. "The duty of any person is the obligation of due care to refrain from any act which will cause foreseeable harm to others even though the nature of that harm ... is unknown at the time of the act." 57A Am.Jur.2d *Negligence* § 83.

*merce, Inc.,* 1997 SD 33, ¶ 10, 561 N.W.2d 666, 669 (quoting *Lamp v. First Nat'l Bank of Garretson,* 496 N.W.2d 581, 583 (S.D. 1993)).

[¶ 25.] The majority opinion inexplicably distorts well-settled principles of negligence by concluding that an electric shock was unforeseeable and therefore, Spink owed no duty to Bradley. Whether Spink owed a duty to Bradley is not determined by analyzing whether Spink could foresee the precise harm that befell Bradley. That Spink's employees owed a duty to exercise the standard of care which reasonably prudent, trained and experienced electricians would exercise cannot seriously be disputed. Whether they breached that duty is a disputed genuine issue of material fact and presents a question for the jury. Summary judgment is especially unsuited in negligence cases where the ultimate issue requires the trier of fact to determine whether the standard of care was met in a specific situation. *Wildeboer,* 1997 SD 33 at ¶ 10, 561 N.W.2d at 669. "Negligence is the breach of a duty owed to another, the proximate cause of which results in an injury." *Mark, Inc. v. Maguire Ins. Agency, Inc.,* 518 N.W.2d 227, 229 (S.D.1994). "Resolving negligence questions is an elemental jury function[.]" *Robbins v. Buntrock,* 1996 SD 84, ¶ 8, 550 N.W.2d 422, 425.

[¶ 26.] Summary judgment was improper and we should reverse and remand for trial on the merits.